HANLEY ET AL. v. CHECKER CAB CO., INC., ET AL.

———

(February 17, 1930. Opinion and Decree.)
(March 10, 1930. Rehearing Refused.)

———

Hugh Wilkinson, Fred A. Oser and A. Miles Coe, of New Orleans, attorneys for plaintiffs, appellees.

Paul L. Fourchy, of New Orleans, attorney for Checker Cab Co., defendant, appellant.

A. R. Christovich, of New Orleans, attorney for Yellow Cab Co., defendant, appellant.

HIGGINS, J. Plaintiffs, as husband and wife, bring this suit against defendants in solido for damages for personal injuries sustained by the wife and for medical and hospital expenses, etc., claimed by the husband as head and master of the community of acquets and gains.

Defendants denied liability. There was judgment in favor of the wife for the sum of $2,500 and in favor of the husband for $537, with legal interest from judicial demand, against the defendants in solido, from which they have appealed.

The record shows that on February 23, 1925, at about 1:45 p. m. Mrs. Hanley, one of the plaintiffs, and Mrs. Lucille Reilly, were passengers in a Checker taxicab, owned and operated by the defendant Checker Cab Company, Inc. The taxicab was proceeding down Bourbon street in the direction of Esplanade avenue. A Yellow taxicab, owned and operated by Toye Brothers, the other defendant, was being driven on Esplanade avenue in the direction of the river. Bourbon street is a paved, narrow, one-way street in the direction of Esplanade avenue with single street car tracks in its center. Esplanade avenue has a neutral ground in the middle upon which there are double street car tracks, with paved streets on each side of the neutral ground. The paved side nearest Canal street is a one-way street in the direction of the river and the opposite side is a one-way street in the direction of the lake. There is a brick wall along Bourbon street about 6 feet in height, which comes up to the property line on the uptown lake corner of Bourbon street and Esplanade avenue. As both taxicabs approached this intersection, the front of the Yellow cab struck the left

side of the Checker cab about where the door of the cab is located, turning the Checker cab over on its side on the river side of the neutral ground of Esplanade avenue against a telephone post. The Yellow cab proceeded on out Esplanade avenue in the direction of the river and was brought to a stop by the chauffeur some distance from the scene of the accident.

Mrs. Hanley was seated on the left side and Mrs. Reilly on the right side of the Checker cab, and they both testified that as the Checker cab went down Bourbon street, they admonished the driver not to drive so recklessly because they were alarmed for their safety; that he was operating the cab at an excessive rate of speed; and that he entered the avenue, at the point where the accident occurred, at an excessive rate of speed without stopping to ascertain if there was any traffic coming towards the river on Esplanade avenue.

The driver of the Checker cab was not produced as a witness, but the Checker Cab Company produced other witnesses who testified that the driver of the Checker cab stopped at the intersection of Bourbon street and Esplanade avenue and blew his horn before entering the intersection. They further testified that the Yellow cab was going at an excessive rate of speed and did not stop or blow its horn before coming to the intersection.

The chauffeur of the Yellow cab, as a witness for defendant Toye Brothers, testified that he was driving on Esplanade avenue in the direction of the river at about 15 miles per hour, and that as he approached the intersection of Bourbon street he slackened his speed to about 3 miles per hour and blew his horn; that he looked up Bourbon street for a distance of about 50 feet and did not see any traffic approaching, and then proceeded to cross, when suddenly the Checker cab at a great rate of speed dashed in front of his car and was struck on the left rear side about where the door is located, resulting in the Checker cab turning over as hereinabove described.

The plaintiffs seek to hold the Checker Cab Company liable on the ground that Mrs. Hanley was a passenger in the Checker cab, which therefore bore the burden of proving that it was free from negligence or fault; and further contend that the defendant Toye Brothers is responsible because of the negligent, careless, and reckless manner in which its chauffeur operated the Yellow cab; and that the negligence of both chauffeurs was the proximate cause of the damage and injury for which plaintiffs seek to recover.

The Checker Cab Company contends that it discharged the burden of showing itself free from negligence as a carrier of passengers by the testimony of its witnesses to the effect that the Checker cab stopped at the intersection of the two streets and blew its horn before proceeding across, and further that its witnesses have established the fact that the Yellow cab was solely responsible for the accident because of the excessive speed at which it was being operated.

The defendant Toye Brothers contends that the Checker cab was solely responsible for the accident because it did not stop or blow its horn at the intersection but proceeded across the path of the Yellow cab at a reckless rate of speed; and that its evidence establishes the negligence of the driver of the Checker cab and shows that the driver of the Yellow cab was free from fault; that while the Checker cab had the right of way under the traffic ordinance of the city of New Orleans and the Yellow cab technically violated the provisions of the ordinance in failing to stop at the intersection before proceeding to cross, nevertheless the prox-

imate cause of the accident was the excessive rate of speed of the Checker cab which entered the intersection in a reckless and careless manner.

The plaintiff and Mrs. Reilly testified that the driver of the Checker cab entered the intersection at a rate of speed of approximately 30 miles per hour and that the driver did not stop or blow its horn before entering the intersection although his view of traffic coming from his left was obstructed by the brick wall along Bourbon street.

The witnesses for the Checker Cab Company and also Mrs. Reilly and Mrs. Hanley, as witnesses for plaintiffs, testified that the Yellow cab did not stop or blow its horn, but entered the intersection at a rate of speed of about 35 miles per hour, and that the driver of the taxicab was looking towards his left instead of towards his right just before the accident.

The driver of the Yellow cab testified that the Checker cab entered the intersection at an excessive rate of speed of about 30 or 35 miles per hour without stopping or blowing his horn before doing so. He is corroborated by Mrs. Reilly and Mrs. Hanley.

In short, the testimony of the Checker Cab Company's witnesses corroborates the plaintiffs' evidence that the driver of the Yellow cab was at fault, and the witnesses for Toye Brothers corroborate the plaintiffs' evidence that the driver of the Checker cab was at fault in causing the accident. The defendants blame each other with having caused the accident.

We have reached the conclusion that the proximate cause of the accident was the negligence, carelessness, and recklessness of the drivers of both taxicabs in entering the intersection at an excessive rate of speed, without due precaution and care. This is especially true in view of the fact

that the vision of both drivers, as to traffic coming into the intersection, was obstructed by the 6-foot brick wall situated on the uptown lake corner of Bourbon street. Therefore plaintiffs are entitled to recover.

Both defendants contend the quantum of damages allowed is excessive. It appears that Mrs. Hanley was seated on the left-hand side of the Checker cab and Mrs. Reilly on the right-hand side. Both cabs were traveling at a rapid rate of speed when they collided. When the Yellow cab struck the Checker cab, it was turned over on its side, causing Mrs. Hanley to fall over on Mrs. Reilly and the rear seat of the taxicab to fall on Mrs. Hanley. The ladies were rescued through the window of the cab and were removed from the scene of the accident to a residence in the neighborhood and then in a Yellow cab to their hotel, where they were treated by two young doctors who were sent by Dr. Batchelor, who had been summoned but was unable to come. The next morning Dr. Hoefeld, the physician for the Checker Cab Company, saw the ladies at the hotel and advised them to go to a hospital. The same day they went to the Hotel Dieu and engaged the services of Dr. Gelpi, who treated Mrs. Hanley for eight days. While in the hospital, due to severe nervous shock to Mrs. Hanley, Dr. Gelpi called in Dr. Otis, a specialist in neuropsychiatry, who treated her for a period of three days. At the end of eight days plaintiff was discharged from the hospital but was compelled to remain in the city of New Orleans for several days before being able to take a train to go to her home in New York.

It appears that Mrs. Hanley suffered an injury to her nose which bled profusely; that she received a blow on the head and a bad cut on her right knee and an injury

to the same leg. She testified that bruises developed almost over her entire body and that she was blue across her stomach and chest and suffered considerable pain. In this statement she is corroborated by Mrs. Reilly.

Both Drs. Otis and Gelpi testified for the plaintiffs, but the plaintiffs complain that they were disappointed and surprised in the doctors' testimony, because they described Mrs. Hanley's injuries as minor injuries and not permanent injuries as plaintiffs claim. Dr. Otis, who saw Mrs. Hanley several days after the accident, testified as to her nervous condition and described "the psychic neurosis mild." Dr. Gelpi, who treated Mrs. Hanley, corroborates her, except that the injuries were not permanent. He testified that the injuries were of a minor nature, but stated:

"Q. Just how badly hurt does a person have to be to call it a minor case in your estimation?
"A. Do I have to answer that?
"The Court: I think so, yes.
"A. (Continued) Well, it is hard to say exactly. The point I tried to carry in my answer was that the likelihood was that those injuries were not severe enough to produce permanent lasting injury."

Mrs. Hanley further testified that she was permanently injured and as a result of the accident she was anemic and still nervous; that she had been treated in New York for a considerable period by Dr. Frank Adair, whose testimony was not taken.

However, taking the testimony of plaintiffs, Mrs. Reilly and the Drs. Gelpi and Otis, we are convinced that Mrs. Hanley suffered serious and painful injuries from which she suffered for a considerable period, but which were not permanent injuries.

The jury awarded her $2,500, but we feel that an award of $1,500 would be sufficient to compensate her for the injuries which she sustained.

Both counsel for defendants complain that the amount of $537 awarded to Mr. Hanley, for the amount of clothing ruined, $150, remounting of ring $12, and expense in New Orleans for ten days at $20 per day, or $200, are excessive, and that the jury failed to take into consideration the fact that the doctors' bills of $135 had been paid by the Checker Cab Company. We are of opinion that $135 should be deducted from the amount of $537 and that $10 per day is sufficient allowance for expenses, or $100.

Since the preparation of this opinion, it is made to appear in this court by the joint motion of plaintiffs and the defendant Toye Bros. Auto & Taxicab Company that the case has been compromised and settled between these parties, and they ask that the suit be dismissed insofar as the defendant Toye Bros. Auto & Taxicab Company is concerned and with full reservation of plaintiffs' rights against the defendant Checker Cab Company.

In view of the above-mentioned joint motion, it is ordered, adjudged, and decreed that the appeal be dismissed as to the defendant Toye Bros. Auto & Taxicab Company upon payment of costs of court in accordance with the said joint motion.

It is further ordered, adjudged, and decreed that the judgment of the district court be amended by reducing the judgment in favor of Mrs. Scholl Hanley, plaintiff, to the sum of $1,500 with legal interest from judicial demand until paid, and the judgment in favor of plaintiff Arthur J. Hanley, to the sum of $302 with legal interest from judicial demand until paid; and as thus amended is affirmed, appellant to pay all costs.