Nos. 810-811

First Circuit

WELCH v. LOUISIANA OIL REFG. CORP.
(Two Cases)

(June 16, 1931. Opinion and Decree.)

Hawkins & Pickrell, of Lake Charles, attorneys for plaintiff, appellee.

C. V. Pattison, of Lake Charles, and J. C. Henriques and Frank T. Doyle, of New Orleans, attorneys for defendant, appellant.

MOUTON, J. In these two cases, Mr. Elsworth Welch is suing for damages to a Hupmobile sedan, his property, which resulted from a collision with a truck belonging to defendant corporation; and Mrs. Welch, his wife, is demanding damages for personal injuries received in the accident.

The lower court rendered judgment in favor of Mrs. Welch against defendant for $1,184.34, but rejected the demand of Mr. Welch, who appeals.

The defendant corporation also appeals and Mrs. Welch is asking for an increase in the amount of damages allowed to her.

All the litigants are therefore dissatisfied with the decree below which quite often happens. Indeed, to render justice is a difficult and hard task.

Mr. and Mrs. Welch are residents of Tulsa, Okla. In July, 1930, they left their home with their daughter, Miss Opal, for a visit to their son, who was living in the town of Sulphur situated west of Lake Charles.

They were coming southward in a sedan on the Beauregard highway; their daughter, Miss Opal, at the wheel driving, with her father, Mr. Welch, on the front seat on her right side. The Beauregard highway, which runs south, is intersected at right angles by the Old Spanish Trail, a paved highway. Beyond the intersection the Beauregard highway continues south-

ward under the name of the Lafitte cut-off.

There was a stop sign at about 400 feet on the north side of the Old Spanish Trail towards which Miss Opal was driving. She did not see this stop sign, nor did her father or mother. The sedan was traveling at about twenty miles an hour, but slackened its speed to about 12 or 14 before reaching the Old Spanish Trail.

The truck of defendant corporation, which collided with the sedan in the intersection of the two highways, was coming from the east on the Spanish Trail, and was going westward towards Lake Charles. Mr. Moore, who was also driving towards Lake Charles, the same direction the truck was traveling, says that, when it passed ahead of him, which was at a short distance east of the intersection, it was moving at about twenty or twenty-five miles an hour.

Tritico, a witness for defendant, was going north on the Lafitte cut-off towards the intersection, and saw the collision. He says that when Miller, the driver of the truck, "put his emergency on to side track the car," it seemed to him that it was then going about twenty-five or thirty miles an hour.

It is shown that there was a filling station on the northeast corner of the intersection, but that it did not obstruct the views of travelers on either of the two highways where they intersected each other. The record shows that Miss Opal saw the truck when it was coming towards the intersection, and that likewise Miller, the driver of the truck, saw the sedan before it reached the Spanish Trail at the intersection. It is well established, and practically undisputed, that the sedan entered the intersection first, and that the driver of the truck saw when it entered.

The truck, which was traveling on the paved highway, had the right of way, but, as the sedan had entered the intersection first, it had the right to proceed across the Spanish Trail, which it was the duty of the truck to respect. Middleton v. Jordan, 10 La. App. 189, 120 So. 668; Marshall v. Freeman, 10 La. App. 12, 120 So. 414; Pope v. Locascio, 13 La. App. 304, 126 So. 727, 729.

The driver of the truck does not deny that he saw the sedan going through the intersection, but says, that, when about twelve feet from it, the car came suddenly to a stop; that he did all he could to swerve to his right, and thus pass in its rear, but without avail, and ran into the rear left wheel of the sedan.

The occupants of the sedan, Mr. Welch, his wife, and their daughter, while admitting they were going slowly, deny that their car had come to a stop in the intersection when it was struck.

Tritico, witness to whom we have heretofore referred, says, that the occupants of the sedan were looking and pointing out for signs, and saw two hands, "one on one side, and one on the other." The fact is that Mrs. Welch was asked if she was not confused, and was not looking for signs, and answered, "We looked." This answer, it is true, was not given in reference to the time when the collision occurred, but shows that they were rather confused about the route they should take, and in which there is nothing strange or singular, as they were strangers from another state, and were not familiar with the locality.

The sedan was coming towards the auto Tritico was driving, and naturally he could not say with positiveness that it had actually come to a complete stop when

he saw the truck run into it. If it had not come to a state of absolute immobility, no doubt it was barely moving when the collision occurred. That fact appears from the testimony of Tritico who was rigidly cross-examined by counsel for plaintiffs in reference to statements he had made, to the effect that he had not seen the collision. His testimony shows that he testified in the case reluctantly, and, so far as the record shows, there is nothing whatsoever to indicate that he so conducted himself through corrupt or biased motives.

The lower court found that the weight of his testimony was affected, but was strengthened by the apparent sincerity and plausibility of the account he gave of the occurrence.

We can see nothing which could lead us to believe that he perjured himself in the testimony he gave in the case.

The lower court believed him, and we do not see why we should discredit his testimony. We therefore conclude that Miss Opal had virtually stopped in front of the advancing truck when it ran into the sedan. She had the right to proceed, but it was her duty to continue across the intersection, and, when she stopped or came to a state of practical immobility, she was negligent and at fault.

When Miller passed ahead of Moore's car he was going at about twenty-five miles an hour, as is shown by Moore's and Miller's testimony. According to Tritico, about the time the collision happened, Miller was moving at the speed of about twenty-five or thirty miles an hour.

Miller says the fastest he could make in the truck was thirty-five miles an hour, but that he hardly ever traveled that fast. He says, he slowed down when he got to the intersection. If he did, he must have been going at a lively clip before he reached that point. It is impossible to reach any other conclusion from that character of evidence but that he was moving at twenty or twenty-five miles an hour when he entered the intersection, and had moderated his speed only to a slight degree when he ran into the sedan. He was familiar with the locality where, as he testifies he passed in his truck several times every day and knew that the traffic was quite heavy at the intersection. Knowing that, the speed at which he was traveling at the time must be characterized as being negligent and reckless.

It is shown that the intersection, at that point, is over 100 feet in width, and if he had had his truck under the least control, there can be no doubt that, having seen the sedan when it entered the intersection, he would have had ample time to swing his truck to the right, and would have easily and safely passed around the sedan in the rear.

Much has been said because Miss Welch had not, in obedience to the law, stopped the sedan before entering the intersection.

If both vehicles had reached the intersection at the same time, she would have been culpable of negligence if she had attempted to cross ahead of the truck which had the right of way. Norwich Union Indemnity Co. v. Cohen, 1 La. App. 512; Miss Lyda Belden v. N. G. Roberts, 3 La. App. 338.

She should have stopped on seeing the stop sign. She, however, did not see it, nor was it seen by her father or mother before entering the intersection. After she had entered, and was seen by Miller, the situation was reversed, and she had then acquired the legal right to proceed across.

It then became the duty of Miller to respect her right to negotiate the intersection; otherwise we would be driven to the untenable conclusion that Miller, because he had the right of way, could have plunged headlong over the route he was traveling, regardless of consequences. Such a doctrine could not be maintained. This is not intended to mean that learned counsel for defendant are contending for such a rule, but is stated here merely to indicate the result which would follow if the vehicle that enters an intersection the second in point of time was not held to proper care and caution in allowing the first to proceed across the intersection.

Hence the fact that Miss Welch did not stop before entering the intersection is not the essential factor in this case, which, for a proper solution, revolves around the question as to what occurred when the cars collided. At that time, Miss Welch having practically stopped, she was at fault, as is hereinabove stated; and Miller, driver of the truck, was equally negligent and at fault in running into the sedan.

Miss Welch and Miller were joint tortfeasors; suit could therefore be brought against defendant corporation which had to respond for its employee, Miller. Shield v. Johnson & Son Co., 132 La. 773, 61 So. 187, 47 L. R. A. (N. S.) 1080; Whipple v. Lirette, 11 La. App. 485, 124 So. 160; Denham v. Taylor et al., 15 La. App. 545, 131 So. 614.

The court rejected the claim of Mr. Elsworth Welch for damages to the sedan. The car belonged to him and was being driven by his daughter, a young lady 21 years of age. It was with his permission she was driving, he was sitting next to her on the front seat, and obviously the car was under his control. He was not a guest, her negligence was his negligence, and he is not entitled to any damages. His claim was correctly denied.

A different situation arises, however, as to the claim of Mrs. Welch, which is based on the proposition that she was a guest.

The contention of counsel for defendant is that she was engaged in a joint adventure or common enterprise with her husband and daughter, was not a guest, and cannot recover.

This question was not passed upon in the able opinion of our learned brother of the district court. Whether it was presented to him as an issue we are not aware, and the duty rests upon us to dispose of it.

The proof is that Mr. Welch owned the sedan, and on the way his wife drove it, probably occasionally, although the record does not disclose that fact. His daughter was driving when the accident happened. Evidently she was driving for him, the head of the family and the owner of the car. His purpose was to take his family for a visit to his son at Sulphur. In most every case where a husband takes his wife around or on a trip in his car, a stop or visit somewhere is intended. If in such cases the outing or visit is to be considered as a joint venture or enterprise, the rule which recognizes a wife as a guest in reference to her husband when she is wrongfully injured in a collision or otherwise would be practically abolished or could rarely be applied.

As we understand the law on this subject, we find, that Mrs. Welch, who occupied the back seat in the car, and had nothing to do with its direction, control,

or management, was a guest, and that her right must be considered in that light.

Counsel for defendant, if we appreciate their contention correctly, do not question the well-established rule to the effect that the negligence of the driver cannot be imputed to the guest. In emphasizing their position on this branch of the case, they refer to that part of the syllabus in Churchill v. Texas & Pacific Ry. Co., 151 La. 726, 92 So. 314, where the court used the following language:

"The negligence of the driver of an automobile in approaching a railroad crossing without slackening his speed, and in attempting to beat the train across, does not defeat recovery for the death of one riding in the automobile as his guest, unless the circumstances were such that deceased could be charged with negligence of his own."

With the view of being more specific, we must say, that counsel are grounding their contention on the clause of the foregoing quotation where the court says, "unless the circumstances were such that the deceased could be charged with negligence of his own."

In other words, counsel contend that Mrs. Welch was guilty of independent negligence. In support thereof they say that Mrs. Welch failed to warn her daughter not to get in the way of the truck while she saw it approach at a dangerous speed, and was therefore culpable of contributory negligence.

In the Churchill case, to which counsel refer, the court said that Churchill, the guest, who was killed, did not see the train until almost at the instant of the collision, but had shouted a warning as soon as it was seen, and was not therefore guilty of negligence.

Testifying in reference to the time of the impact, Mrs. Welch says she did not see the truck until it hit the sedan in the back. In speaking of the driver of the truck, she says: "I just saw him going to hit us." She was then asked: "Did you tell your daughter he was going to hit you?" She replied: "No, sir. I didn't have time to tell her he was going to hit us."

Churchill, according to the Supreme Court, had the time to shout a warning, but Mrs. Welch did not. Even under the ruling in that case, Mrs. Welch could not possibly be held to have failed to give a warning.

Counsel say Mrs. Welch saw the truck approaching, and failed to warn her daughter to keep out of its way. It is true Mrs. Welch said she saw the truck coming, but in connection therewith, remarked that they were going straight across, and that she paid no attention to it until she was struck. She thought she said we had "lots of time to get across." In connection with that statement, it is appropriate to refer to what the court said in reference to Churchill, in the Churchill case above cited.

The court said that Churchill, the guest, was not required to keep a lookout for danger, but could rely upon the discharge of that duty by the driver, who was responsible for the operation of the car.

In a recent case, in passing on a similar question, we recognized the rule that the guest could not rely implicitly on the driver, but to a reasonable extent, would place his reliance on the one operating the auto.

In this case, it is evident that Mrs. Welch thought, and had the right to assume, that her daughter would keep on straight across the intersection, that she would have ample time to pass ahead of the oncoming truck and could not antici-

pate that her daughter would suddenly stop in the intersection. Mrs. Welch was therefore not negligent for relying on that assumption. It was for that reason, evidently, that she gave no further attention to the truck after seeing it, and noticed it only when it was running into the sedan, at a time too late for her to even shout a warning, as Churchill had done before he was killed by the train. Mrs. Welch was sitting on the back seat, had nothing to do with the driving which was altogether in the hands of her daughter and husband, had no control or management of the sedan, and cannot, under the circumstances above detailed, be held guilty of contributory negligence.

She is therefore entitled, as a guest, to recover damages against defendant; the only question remaining being as to the quantum which should be allowed her. It is shown that after the accident she was carried to the sanitarium at Lake Charles, where she remained three days; she had three ribs broken, hurt badly across the abdomen and shoulder, also in one of her arms; suffered intensely; was two months at her son's home, and almost entirely incapacitated; that two of her ribs are healed, but the other overlaps, which is usually accompanied by pain. The physicians did not think that her injuries would be permanent. Such seems to have been their opinion, but, however that may be, considering the nature of her injuries and bruises to her body unnecessary to describe, and the intense pain she experienced, which continued in a lesser degree to the time of the trial, we think that the allowance of $1,184.34 in damages is fair, and demands neither increase nor reduction.

Judgment affirmed in both of these two consolidated cases.