**THIBODEAUX et al. v. STAR CHECKER CAB CO., Inc., et al. \***

No. 14256.

Court of Appeal of Louisiana. Orleans.

June 27, 1932.

St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, for appellant Elwell.

P. L. Fourchy, of New Orleans, for appellant Star Checker Co.

Geo. Montgomery and M. C. Scharff, both of New Orleans, for appellees.

HIGGINS, J.

Mrs. Emma Thibodeaux and Mrs. Mary Miller sued the Star Checker Cab Company, Inc., and Howard H. Elwell, in solido, in separate suits, to recover damages for personal injuries and medical expenses said to have resulted from a collision between a taxicab, in which they were riding as passengers, and Mr. Elwell's Whippet sedan at the corner of Melpomene and Magnolia streets, this city on March 18, 1930, about 1:30 o'clock p. m.

The cases were consolidated for the purpose of trial and decision. In their petitions plaintiffs allege that the accident was the result of the joint and concurrent negligence of the driver of the taxicab and Mr. Elwell, who was driving his Whippet car, in that they failed to keep a proper lookout; that they tried to drive across the intersection ahead of each other; that neither gave any signal of his approach or of his intention to proceed across the intersection; and that they both were driving their cars in excess of 25 miles per hour, in violation of the traffic ordinance of the city of New Orleans.

Mr. Elwell answered, denying that he was

in any manner at fault, averring that he reduced his speed from 18 miles to 15 miles per hour as he crossed the intersection; that he sounded his horn, and, having looked out Melpomene street in the direction of the river, and not seeing any vehicle within a reasonable distance, he proceeded across the intersection and had reached the neutral ground on Melpomene street when the taxicab, which was being driven at the rate of approximately 45 miles per hour, in violation of the traffic ordinance of the city of New Orleans, without stopping or attempting to slow down as it approached Magnolia street, ran into the left side of the Whippet car and shoved it against the concrete base of a flagstaff on the neutral ground in the direction of the lake.

The taxicab company in its answer denied the charge of negligence against its employee, and averred that the taxicab came to a full stop before crossing Magnolia street, and was struck from the rear after it had almost completed the crossing by the Whippet sedan; that the accident resulted solely on account of the reckless and careless manner in which defendant Elwell was driving, in going at an excessive rate of speed, and without coming to a stop at the intersection.

There were judgments in favor of Mrs. Thibodeaux in the sum of $823.20 and in favor of Mrs. Miller in the sum of $1,464.50, against the defendants in solido. They have appealed, and plaintiffs have answered the appeals in their respective cases asking that the respective awards be increased.

The record shows that Melpomene street is a boulevard with a neutral ground in the center with paved roadways on each side, and runs from the direction of the river to the lake; vehicles proceeding in the direction of the lake using the lower roadway and those in the direction of the river the upper roadway.

Magnolia street runs from up town to down town, and is a paved thoroughfare with double street car tracks located thereon. These streets intersect each other at right angles, and, under the traffic ordinance, both are designated as right of way streets.

Mrs. Miller and Mrs. Thibodeaux were passengers in the taxicab, which was a Ford car. It was being driven on Melpomene street in the direction of the lake. Mr. Elwell was driving up town on Magnolia street in a 1927 Whippet sedan, with his wife seated beside him on the front seat. The machines collided in the intersection. Both drivers attempted to avoid collision; Mr. Elwell swerving to his right and the taxicab driver to his left. The right front side of the taxicab struck the left side of the Whippet car about midway, causing the Whippet to go up on the neutral ground and stop with its front bumper against the concrete base of a flagpole. The

taxicab stopped facing up town between the two car tracks on Magnolia street in the roadway adjacent to the ends of the neutral ground.

The taxicab company, being a public carrier of passengers, owed the plaintiffs, as passengers, the duty of exercising a high degree of care not to injure them, and, under the doctrine of res ipsa loquitur, bore the burden of exculpating itself from fault. As far as Elwell is concerned, however, the plaintiffs were required under the rule in ordinary damage suits to prove that he was guilty of negligence which contributed to the accident.

Mr. Elwell testified that he had been driving up Magnolia street at about 18 miles per hour and slowed down to about 15 miles as he approached the intersection; that he "sounded his horn and seeing nothing I proceeded to go over." A little later in his testimony he states that he looked out Melpomene street towards the river and saw a machine approaching about a block away, and that, as the front of his car reached the neutral ground curbing, this automobile struck his car on the left side. He admitted that he knew that the crossing was a dangerous one, and said that was the reason why he slowed down.

The driver of the taxicab testified that there was a governor on his car which prevented it from running in excess of 25 miles per hour; that, as he approached the intersection, he came to a full stop and, not seeing any automobile in close proximity, attempted to cross the street when Mr. Elwell's car suddenly came in view, traveling at a high rate of speed; that he attempted to turn up Magnolia street; and that Mr. Elwell's Whippet car struck the taxicab on the right rear side; that he reached the intersection first and was nearly across when his cab was struck.

Mrs. Thibodeaux testified that, as she was engaged in conversation with her face turned towards up town she did not see Mr. Elwell's car approach, and also stated that she did not notice the rate of speed at which the taxicab was being driven.

Mrs. Miller testified that the taxicab was being driven at a very rapid rate of speed, and neither slowed down nor stopped at the intersection. Both of these ladies testified that the impact was of a very severe and violent nature.

It is impossible to reconcile the testimony of the witnesses for Mr. Elwell with the testimony of the witnesses for the taxicab company. We do not believe any useful purpose would be served by narrating it. It is sufficient to say that the witness for Mr: Elwell testified that the taxicab was being driven about 35 miles per hour and that the driver neither sounded his horn nor slowed up at the intersection, that Mr. Elwell's car did not

stop before entering the intersection, and was going about 12 or 15 miles per hour while crossing, and that the front part of it had very nearly reached the neutral ground curbing on Melpomene street when it was struck on the left side about midway.

The witnesses for the taxicab company testified that the taxicab came to a full stop at the intersection, and that Mr. Elwell's car approached the intersection at a rapid rate of speed without slowing down and ran into the taxicab, striking the right rear side of it, due to the fact that the taxicab driver swerved sharply to his left in an effort to avoid the collision.

■■ We believe that the driver of the taxicab was at fault because he admits that he did not see Mr. Elwell's car approaching until he was in the intersection. If he had been keeping a proper lookout and exercising ordinary care, there is no reason why he should not have seen the Whippet sedan as it approached the intersection. If the driver's testimony and the other witnesses' testimony for the company is accepted as being true, the taxicab driver was in a position of safety, and ventured out in front of the on-coming Whippet sedan, which they say was being driven at a rapid rate of speed. Such conduct on the part of the driver was negligence. So that, under either or both versions of how the accident occurred, the taxicab driver was at fault.

■ Mr. Elwell first said that he did not see the taxicab as he neared the intersection, but later on sought to excuse himself from fault by saying that it was a block away, and he therefore felt that he had sufficient time to cross the intersection, but, on account of the excessive rate of speed of the taxicab, it ran into his car before he could negotiate the crossing. Again we say that, if Mr. Elwell did not see the taxicab, he was at fault in failing to keep a proper lookout, for there was nothing to intercept his view. It is very difficult for us to accept his statement that he saw the taxicab about a block away and that it struck his car before he could complete the crossing, for the taxicab would have had to be going at a terrific rate of speed to have covered the distance in so short a period of time. Yet all the evidence shows that it came to rest a very short distance from the point of contact. We believe Mr. Elwell was also at fault in not keeping a proper lookout. Tarleton-Gaspard v. Malochee et al., 16 La. App. 527, 133 So. 409; Wolfe v. Toye Bros. Auto & Taxicab Co., Inc., 18 La. App. 321, 138 So. 453; Hanley et al. v. Checker Cab Co., Inc., et al., 12 La. App. 562, 126 So. 274; Quatray v. Wicker et al., 16 La. App. 515, 134 So. 313.

We have carefully read the record, and are not prepared to say that either the taxicab company or Mr. Elwell has successfully shown that their respective machine reached such a point in the intersection as to give it the right of way. The trial judge concluded that the drivers of both vehicles were at fault, and we feel that his conclusion is correct.

■ As to the quantum allowed Mrs. Thibodeaux, the appellants complain that the award of $823.20 is excessive, and the appellee contends that it is inadequate. Mrs. Thibodeaux, who was first taken to the Charity Hospital for first aid treatment and then removed to her home, suffered a severe trauma and injury to her right shoulder and arm and to her back, which caused her considerable shock and pain, necessitating carrying her arm in a sling for 7 weeks. She was under the care of a doctor for about 5 weeks, but did not have to remain in bed. The injuries were severe, but not permanent. It appears that she suffered a miscarriage six weeks after the accident, but Dr. Bradburn, her physician, was unable to state if this resulted from the accident. We feel that this item had not been proven definitely.

Mrs. Thibodeaux's husband joined in the suit, but in the prayer of the petition damages were asked only on behalf of the wife. When evidence was sought to be introduced for the purpose of proving the medical expenses, counsel for defendants objected on the ground that it was a community claim and had not been prayed for by the husband. The judgment of the lower court was in favor of the wife alone, and the husband did not appeal. The medical expenses being a community debt, for which the husband was responsible, and for which he alone can recover, we are compelled to disallow them. Shield v. Johnson & Son Co., 132 La. 773, 61 So. 787, 47 L. R. A. (N. S.) 1080; Munch v. Central Laundry, 2 La. App. 123.

We believe that the award of $823.20 is excessive, and should be reduced to $500 for injuries, pain, and suffering. Ciaccio v. Cashio et ux., 19 La. App. 65, 139 So. 34; Cyrus v. Tung, 16 La. App. 549, 134 So. 782; Arena v. Morris & Co., 14 La. App. 563, 130 So. 565; Greer v. Hamilton, 3 La. App. 120; Angermeier v. Giarratano, 7 La. App. 355; Liddell v. Lex, 8 La. App. 13; Stone v. N. O. P. S., Inc., 11 La. App. 150, 119 So. 757.

■ As to the amount allowed Mrs. Miller, i. e., $1,464.50, there is the same contention on one side that it is excessive and on the other that it is inadequate. The evidence shows that, as a result of the accident, Mrs. Miller was knocked unconscious. She was taken to the Charity Hospital for first aid, and then allowed to go home. Dr. Bradburn treated her from the date of her injury up to the time she went to Touro Infirmary, May 30, 1930. She was a woman about 53 years of age, and weighed 164 pounds. She developed pylitis, diabetes, and gall bladder trouble, which sicknesses she had previously ex-

perienced some 8 or 9 years before. Dr. Bradburn referred her to Dr. Bloom, who did not testify, for the diabetic condition and treated her himself for the kidney infection and gall bladder trouble. He was unable to state definitely that the accident was responsible for the pylitis, diabetes, and gall bladder trouble, but did say that the general contusions and bruises, as well as the fracture of the third and fourth ribs on the right side, were the result of traumatic injury. From the fractures and bruises, he estimated her disability to be about 8 weeks. Mrs. Miller testified that previous to the time of the accident she had been enjoying good health, but since the accident she had considerable pain, discomfort, and was always ailing.

We do not believe that she has succeeded in showing causal connection between the gall bladder trouble, pylitis, and diabetes and the accident, and consequently we cannot allow anything for pain and suffering and medical expenses in connection therewith. It was shown that she spent the sum of $10 for an X-ray and $50 for medical expenses in connection with her injury, which amounts we will allow. For her injuries, including the shock and pain and suffering, we have concluded to allow the sum of $1,000 in addition to the medical expenses, making a total of $1,060. Roth v. Russell, 141 La. 586, 75 So. 418; Hall v. Excelsior Steam Laundry Co., Ltd., 5 La. App. 7; Lanphier v. D'Antoni, 14 La. App. 441, 131 So. 628; Welch v. Louisiana Oil Refining Co., 17 La. App. 100, 135 So. 617; Christos v. Manos, 16 La. App. 512, 134 So. 713.

We note that in both judgments the district judge erroneously designates the Star Checker Cab Company, Inc., as the Star Checker Cab Service. In our decree we shall correct this error by giving the correct name of the defendant company.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment in the case of Mrs. Emma Thibodeaux v. Star Checker Cab Co., Inc., and Howard H. Elwell be amended by reducing the amount awarded plaintiff from $823.20 to $500, together with legal interest thereon from judicial demand until paid; and further amended so as to designate the defendant cab company as the Star Checker Cab Company, Inc.; defendants to pay all costs of both courts. As thus amended, the judgment is affirmed.

It is further ordered that the judgment in the case of Mrs. Mary Miller v. Star Checker Cab Co., Inc. and Howard H. Elwell be amended by reducing the amount awarded plaintiff from $1,464.50 to $1,060, together with legal interest thereon from judicial demand until paid; and further amended so as to designate the defendant cab company as the Star Checker Cab Company, Inc.; de-

fendants to pay all costs of both courts. As thus amended, the judgment is affirmed.

Amended and affirmed.

WESTERFIELD, J., absent, takes no part.