## CHRISTOS v. MANOS

(May 11, 1931.  Opinion and Decree.)
(May 25, 1931.  Rehearing Refused.)
(June 22, 1931.  Writs of Certiorari and Review Refused by Supreme Court.)

Michel Provosty and Oliver P. Carriere, of New Orleans, attorneys for plaintiffs, appellants.

Milner & Porteous, Wm. A. Porteous, Jr., of New Orleans, attorneys for defendant, appellee.

JANVIER, J.  Mrs. Christos, one of the plaintiffs, was a guest passenger in the automobile owned and driven by defendant.  She received injuries when that automobile ran into a truck which was proceeding along the road in the opposite direction.

It is conceded by all parties that the truck was not at fault, since it was proceeding slowly—probably at a speed of about ten miles per hour—and was on the proper side of the road.

It is charged that defendant is liable because of the speed at which his car was being driven, and primarily because, when it became apparent that something was wrong with the car, he did not at once, according to the allegations of plaintiffs' petition, do everything within his power to bring it to a stop.

The trial court rendered judgment in favor of defendant, dismissing plaintiffs' suit.

In the matter of speed we are convinced that defendant was not at fault.  The spot

at which the accident occurred was in the open country, the road was comparatively straight, and there was no reason why the car should not have been driven at any speed permitted by law. The state statute permitted a speed of forty-five miles per hour, and no effort is made to prove that limit was exceeded. On the contrary, defendant fixed the speed at about forty miles per hour, and no witness attempts to contradict him on this point.

The attention of those in the car was first directed to the fact that something was wrong by the sudden swerving from side to side.

It is claimed by plaintiffs that one of the rear tires of defendant's car became slowly deflated, and that this caused the swerving, and it is argued that defendant, immediately upon becoming aware of this condition, should have brought his car to a stop.

It is maintained, however, by defendant's counsel that the deflation did not occur slowly, but was the result of a sudden "blow-out" of a tire, and that when this occurred the immediate result was the swerving, and that the crash occurred before there was time or opportunity to avert it. In a statement made shortly after the accident and in his testimony on the witness stand, defendant said that he had noticed the swerving from one-half to one block before the spot at which the collision occurred, and, if his estimate of the distance is correct, it would seem that within that distance he should have been able to stop. But in both instances his statement was followed immediately by an explanation that he had at once applied the brakes and had brought the car to a stop as soon as it was humanly possible to do so. Counsel for defendant contends that the estimate of the distance was merely a guess and that it should yield to the fact that the brakes were immediately applied and yet the car could not be stopped.

That the brakes were in good condition is not denied, and is evidenced by the condition of the deflated tire which we have examined and from which it is apparent that the brakes were unusually effective, because in two places in the sidewall of the tire, opposite to each other, appear holes plainly caused by the dragging of the tire against an abrasive surface such as gravel.

It is also conceded that the tire which seems to have been primarily responsible for the accident was of good make and apparently was in good condition. It had run only 1,500 miles, and there was no reason to suppose that there was anything defective about it.

It is true that one who invites a friend to ride with him is not an insurer of the safety of the friend. He owes to the friend the duty of making reasonably certain that there is nothing defective in his automobile, and he also undertakes to drive with reasonable safety under all circumstances, but, if he complies with these duties, and injury nevertheless results, he is not liable. Sears v. Interurban Transportation Co., 14 La. App. 343, 125 So. 748; Hudson v. Jackson Brewing Co., 4 La. App. 549; Timberlake v. Cassidy, 1 La. App. 630; Banta v. Moresi, 9 La. App. 636, 119 So. 900. See, also, Dickerson v. Connecticut Co., 98 Conn. 87, 118 A. 518; Albers v. Shell, 104 Cal. App. 733, 286 P. 752; Cleary v. Eckart, 191 Wis. 114, 210 N. W. 267, 51 A. L. R. 576; Sommerfield v. Flury, 198 Wis. 163, 223 N. W. 408; O'Shea v. Lavoy, 175 Wis. 456, 185 N. W. 525, 20 A. L. R. 1008.

In Huddy on Automobiles (7th Ed.) sec. 803, we find:

"In some cases the rule seems to have been adopted that the driver of a motor vehicle is not liable for injuries received by his guest, when such injuries are the result of a defect in the vehicle not known to the driver. This view is sustained by the reasoning that the relation between the parties is that of licensor and licensee; and, following the principle of defective buildings and premises, it is said that a licensee takes the vehicle as he finds it. Under such a rule, the driver is liable only for active negligence, which increases the hazard or creates a new one."

Still, as driver of the car, it was defendant's duty to operate it as a reasonably prudent person would have done, and we are of the opinion that a reasonably prudent person would have attempted to stop the car immediately upon becoming aware of the fact that it was swerving dangerously, and we do not believe that defendant did this. As we have already stated, his own testimony and his own written statement might have resulted merely from an inaccurate estimate of distance, but we cannot lose sight of the fact that the driver of the truck states that, when he noticed the car swerving, it was some three hundred or four hundred feet away from the truck. His estimate then as to the distance at which the automobile was from his truck when it first started careening and swerving is very near to that given by defendant himself in his statement, and the evidence of these two witnesses together convinces us that the swerving had continued for a sufficient time to have permitted of the stopping of the car had defendant attempted to stop it as soon as he became aware of the impending danger. His failure to do so renders him liable.

Let us now consider the question of the amount of the awards to which plaintiffs are respectively entitled. Mr. Christos, as head and master of the community, asks for $198.80, which he states is the amount of doctors' bills, nurses' bills, hospital expenses, and the value of clothing ruined. He seems to have proven without dispute items totaling $198.80, and judgment for this amount should be rendered in his favor.

The injuries to Mrs. Christos consisted, according to her doctor, of a small cut over one eye, a cut under the chin, injury to one ear, and considerable nervous shock. Apparently she also sustained a small linear fracture of the right frontal bone from which, however, no depression resulted. She asks for $5,000. The scars, according to the testimony of the doctor produced by the defendant and according to the photographs, are scarcely noticeable, and the nervousness which she claims to have resulted does not seem to be more than such as usually accompanies injuries of that character. We find it very difficult to determine just what will properly compensate Mrs. Christos for her injuries, and have concluded to award her the sum of $1,250.

It is therefore, ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff Stratos Christos and against defendant in the sum of $198.80, with legal interest from judicial demand and for all costs.

It is further ordered, adjudged, and decreed that there be judgment in favor of plaintiff Mrs. Stratos Christos and against defendant in the sum of $1,250 with legal interest from judicial demand, and for all costs.