We find no error in the judgment of the lower court, and it is therefore affirmed, with all costs.

CULPEPPER, J., recused, and takes no part.

## DRIEFUS v. LEVY et al. *
### No. 4133.

Court of Appeal of Louisiana. Second Circuit, Second Division.
March 16, 1932.

*Rehearing denied May 4, 1932.

Edw. S. Klein, Elias Goldstein, and Foster, Hall, Barret & Smith, all of Shreveport, for appellants.

Foster, Hall, Barret & Smith and Thatcher, Browne, Porteous & Myers, all of Shreveport, for appellees.

DREW, J.

The plaintiff, Mrs. Gladys W. Driefus, instituted this suit against her sister, Mrs. Caro W. Levy, and her husband, Ben Levy, and Sam N. Yarbrough, for damages she claims to have been caused her in a near collision of the automobile driven by Mrs. Levy and a truck, driven by an employee of Yarbrough, in which the accident was caused in averting the collision. She alleged that she was riding in the car with her sister as a guest, and that Mrs. Levy was guilty of the following acts of negligence: In driving at an excessive rate of speed and not slowing down at an intersection, and in not keeping a proper lookout or sounding her horn at the approach of the intersection.

The negligence alleged to the driver of the Yarbrough truck is that he was traveling at an excessive rate of speed, did not slow down at the intersection, failed to sound his horn, and did not keep a proper lookout on entering the said intersection; and in driving into the pathway of the Levy car, which was traveling on a street which was a main artery and by custom was given the right of way.

She also alleged that the joint negligence of both defendants was the proximate cause of the accident and her resulting injuries, for which she seeks damages.

Defendant Yarbrough answered denying negligence on the part of his employee, and alleged that the defendant Mrs. Levy was guilty of all the negligence alleged by plaintiff; and, in the alternative, pleaded that plaintiff was guilty of contributory negligence in not protesting against the carelessness and recklessness of Mrs. Levy, her host. He further alleged that Mrs. Levy had the last clear chance to avoid the accident.

Mrs. Caro W. Levy filed an exception of no cause of action, which was overruled. Defendant Ben Levy filed an exception of no cause of action, which was sustained. Mrs. Levy then filed a motion for severance, which was overruled. She then answered, denying any negligence on her part, and alleged that the near collision and accident following were caused by the negligence, solely, of the driver of the Yarbrough truck. In the alternative, she alleged that the failure of plaintiff to protest and not to alight from the car

were contributory negligence; that she had every opportunity to observe the negligence of defendant and did not protest and was negligent in continuing to ride in the car. She prayed for a trial by jury.

On the issues as made up, the case was tried before a jury, resulting in a verdict in favor of plaintiff in the sum of $1,000 for physical pain and suffering, mental anguish, and permanent injuries, disfigurement of nose, and impairment of health; and $292, for a dress that was ruined, and for nurses', doctor's bills and drugs; and against defendant Mrs. Caro W. Levy.

The demands of plaintiff against Sam N. Yarbrough were rejected.

After a motion for a new trial was filed by Mrs. Levy and overruled, the lower court signed the judgment in accordance with the jury's verdict. From that judgment, plaintiff and Mrs. Levy have both appealed.

■ Plaintiff contends for judgment against Sam N. Yarbrough, the same as against Mrs. Levy, and for an increase in the amount of the award. Mrs. Levy contends she is not liable in any amount and complains of many alleged errors on the trial of the case. The exception of no cause of action filed by Mrs. Levy is not urged in this court in argument or in brief, and we presume it has been abandoned. Neither is the ruling on the exception of no cause of action that was sustained, as to Ben Levy, seriously complained of here, the plaintiff stating that it is immaterial to the result of the litigation.

Defendant Mrs. Levy urges in this court eight reasons for reversing or remanding this case, based on the rulings of the lower court during the trial of the case:

I. The failure of the lower court to grant a severance.

The severance was prayed for on the ground that Mrs. Levy had prayed for a jury trial, and her codefendants had not; that the negligence alleged could not have been a joint act or omission of the defendants and no concerted action was alleged; that defendants filed separate answers and pleadings; and the defenses were antagonistic.

■ There is no merit in the contention that only one defendant prayed for a jury trial for the reason that the defendant, who is now complaining, is the one who prayed for a jury and a jury trial was granted her. She could not be concerned about her codefendants standing trial before a jury, without praying for the same. Her codefendants are not complaining and made no objection at going to trial before a jury.

■ The other grounds for severance are equally without merit. Joint tort-feasors are solidarily liable, Overstreet v. Ober et al., 14 La. App. 633, 130 So. 648; Gardiner v. Erskine, 170 La. 212, 127 So. 604; Jones v. Maestri, 170 La. 290, 127 So. 631; Muller v. Davis-Wood Lumber Co., 2 La. App. 359; Weems v. Moise, 3 La. App. 224; and therefore can be brought into court to answer for their torts in one and the same action.

■ Plaintiff alleged that the direct and proximate result of the negligence of both defendants caused her damage, and the pleadings show that, without the negligence of both, she would not have been damaged. Invariably, as in this case, when joint tortfeasors are joined in the same suit, their defenses are antagonistic, for each attempts to place the blame on the other. This contention of defendant is decided adversely to his views in Overstreet v. Ober et al., cited supra. The question of severance is largely in the discretion of the trial judge, and we concur in his conclusion in overruling the motion.

■ II. That, on the voir dire examination of jurors, it was suggested to them that public liability insurance was carried by defendants, and that this information or suggestion to the jurors that it was a suit against the insurance company was prejudicial. The jurors were asked if they had any interest in the insurance business.

We will answer this contention in the words of Justice Monroe, in the case of Schwing v. Dunlap et al., 150 La. 498, 58 So. 162, 172: "There were objections to the ruling of the trial judge in the matter of the selection of jurors, and they have been considered and found to be not sufficiently well grounded to call for the reversal of the judgment, the more particularly, as the case is before this court, as made up after a protracted trial, and this court is vested with jurisdiction of the facts upon which the jury acted, with power to render such judgment as the evidence may warrant."

III. That the two defendants together were allowed six peremptory challenges, and that her codefendant used four, leaving only two for her; that, after the defendants were exhausted, she challenged B. H. Bolinger. The challenge was disallowed, and he became foreman of the jury.

■ The ruling of the lower court allowing only six peremptory challenges to both defendants was correct. Code of Practice, art. 512; section 13 of Act No. 135 of 1898, p. 223; Schwing v. Dunlap, cited supra.

■ IV. That when plaintiff closed its case in chief, defendant Mrs. Levy announced to the court that she had closed her case and requested the right to then present her case to the jury, which was refused by the court.

The ruling of the lower court was correct. In Overstreet v. Ober et al., supra, this court held that a plaintiff, suing defendants in solido for personal injuries, may introduce testimony fixing responsibility on both or either

(Civ. Code, arts. 2091, 2324), and defendants may introduce testimony to negative allegations of fault charged against them, and testimony introduced by either of the defendants sued in solido, if admissible, is part of the whole case and properly considered in determining the liability.

V. That the lower court erred in permitting the codefendant of Mrs. Levy to call her for cross-examination.

 This objection by defendant was well taken and should have been sustained. Act No. 126 of 1908 grants the right to a litigant to examine his opponent as under cross-examination and does not extend the right for one defendant to call for cross-examination his codefendant. Edwards Bros. v. Berner et al., 154 La. 791, 98 So. 247. However, the testimony elicited under this cross-examination is not necessary to a decision of this case, and this court has not considered that testimony in arriving at its decision.

VI. The next error urged is that, when on cross-examination by her codefendant, over objection, Mrs. Levy was questioned as to an admission she had made regarding defective brakes on her automobile, although there was no allegation of defective brakes.

This objection was good, but as we have held that a codefendant had not the right to cross-examine her, and the testimony elicited thereon not being considered by this court, it is unnecessary to discuss further this contention.

VII. She further complains that, although there was no allegation in plaintiff's petition of a violation of a city ordinance, plaintiff was allowed, over objection, to file in evidence article No. 207 of 1923, of the city of Shreveport, fixing the speed limit on Creswell street.

 The objection to the filing should have been sustained, for plaintiff did not allege a violation of this article in her petition. City of New Orleans v. Labatt, 33 La. Ann. 107. This testimony is not necessary to a decision of this case, and we have not considered it in arriving at our decision.

VIII. She further complains of the refusal of the trial judgment to give certain requested charges to the jury.

 The judge's charge was not reduced to writing, and we do not know what he charged the jury. Without his charge having been reduced to writing and placed in the record, we cannot say whether error was committed or not. However, as we have said previously, we are vested with authority to pass on the facts upon which the jury acted and to render such judgment as the evidence warrants. We think the error of permitting the defendant to call for cross-examination his codefendant, and the admitting in evidence of the ordinance not alleged on, are not sufficient to remand the case to the lower court, for the reason that there is sufficient evidence in the record, without considering this inadmissible testimony, to find the defendant Mrs. Levy guilty of negligence which was a proximate cause of the accident.

We have attempted to dispose of the different errors complained of by defendant, one at a time, due to the earnestness that was shown by counsel for Mrs. Levy in presenting them in argument and in brief.

The plaintiff, Mrs. Driefus, was the house guest of her sister, Mrs. Levy, and was in the Levy car, driven by Mrs. Levy, when this accident occurred. They were on their way to a luncheon engagement and were a little late. At the time of the accident, the Levy car was proceeding north on Creswell street in the city of Shreveport. Mrs. Driefus was riding on the front seat with her sister and on the right-hand side. When they left the Levy home and proceeded to the school to deliver the children to school, Mrs. Levy was driving very fast, and, when entering Creswell street, some seven or eight blocks from where the accident occurred, the speed of the car was noticed by Mrs. Driefus and she requested her sister to slow down and not drive so rapidly, which request was heeded by Mrs. Levy, and the speed of the car reduced to about twenty-five miles per hour, at which speed she continued to travel until the accident occurred.

Creswell street in one of the main arteries of the city of Shreveport, and, although not designated as a right of way street, the public so considers it, and, to a certain extent, the city officials do, for, on the intersecting streets, that is, where Gladstone boulevard intercepts it, there is a "Slow" sign painted on the pavement of Gladstone boulevard, and there is no such sign on Creswell at this intersection. When the Levy car was a short distance from the intersection of Gladstone boulevard with Creswell street, the truck of the defendant Yarbrough, driven by a negro employee acting within the scope of his employment, entered the intersection from the west, intending to cross said intersection and continue east on Gladstone boulevard. The Yarbrough truck was in second gear and traveling at a speed of ten miles per hour, the maximum speed when in second gear, and Mrs. Levy was traveling twenty-five miles per hour. The result was that, when the two machines were about to collide, the drivers awoke to the situation, and, in order to prevent a collision, the truck driver attempted to turn north on Creswell street and Mrs. Levy attempted to turn east on Gladstone boulevard. They successfully avoided colliding by a distance of about one foot, but, due to the necessary suddenness of the turn and the location of the two cars in the street, the truck ran upon the curb on the east side of Creswell street, north of Gladstone boulevard, and the Levy car ran upon the curb on the north side

of Gladstone boulevard, east of Creswell street. The truck driver escaped injury, but the Levy car collided with a small shade tree, resulting in the guest, Mrs Driefus, being thrown through the windshield, cutting her nose and face, and causing her severe shock.

Yarbrough's truck, traveling east on Gladstone boulevard, stopped at the intersection, at which time he saw the Levy car coming north on Creswell, just seventy-five feet from the intersection. Each car was traveling on its respective right side of the street. Notwithstanding this fact, he put his truck in second gear and proceeded to attempt to cross the intersection. He had to start from a dead stop and practically cross the street during the time the Levy car was traveling the seventy-five feet. He had a side view of the Levy car and should have been able to judge approximately its speed.

▮▮ The mere fact that the truck driver entered the intersection first did not justify him in proceeding without caution and care, totally disregarding the on-coming car which he had seen, and he could have easily discovered by looking that whatever rights he had by virtue of entering the intersection first were not going to be respected by the Levy car. He should not have advanced into the pathway of the Levy car, and, by doing so, was guilty of negligence. Huddy's Enc. of Automobile Law (9th Ed.) vol. 3–4, p. 278; Buckner v. Powers, 12 La. App. 630, 125 So. 744.

It was the duty of the driver of the Yarbrough truck to determine, as a man of ordinary prudence would, whether, under all these circumstances, he had sufficient time to cross the intersection safely before the arrival of the Levy car, which he saw advancing to cross his line of travel. He should have taken into consideration the width of the street, the relative speed of his truck and the Levy car, and the distance the Levy car was from the intersection when he started to cross. Any reasonably prudent man should have known that the crossing could not be made without a collision.

▮ The truck driver's testimony also shows that, after he saw the Levy car, he paid no more attention to it until the two cars were about to collide. It was his duty to watch the on-coming car, after once seeing it, and to have slowed his truck and have it under such control as to be able to stop when the Levy car did not. Instead, he was making all the speed possible to make, while in second gear. The negligence of the truck driver in attempting to cross the intersection in the pathway of the on-coming Levy car after he had seen it, together with his failure to keep a proper lookout, was a proximate cause of the accident contributing to the resulting injuries to plaintiff.

Mrs. Levy was traveling north on Creswell street, which is admitted not to be a right of way street by ordinance, but is one of the main arteries of the city, and, at the intersection of Gladstone boulevard with Creswell, there is a "Slow" sign. Mrs. Levy was traveling at an admitted rate of speed of twenty-five miles per hour, and undoubtedly was not keeping a proper lookout. Her testimony as to when she saw the truck is very vague and indefinite. Once she testified on cross-examination by plaintiff, as follows: "A. * * * I did see the truck coming, but as I thought Creswell Street was one of the main arteries in Shreveport I thought the truck would stop and give me a chance to pass, but he did not, and as I came to the corner there I saw that we would hit and collide, and I tried to turn and the truck did turn. * * *"

Later, she was asked the following question: "Q. You say that you saw the truck coming, before you reached the intersection? A. I just remember seeing it. I do not remember how far away it was."

In rebuttal, she was placed on the stand by plaintiff and testified as follows:

"Q. Were you watching the truck driver? A. Yes, sir, I was.

"Q. How far was the truck from the intersection when you saw him? A. I do not know how many feet he was, but I saw him, and expected him to stop or slow down possibly, but I continued and thought he would not continue but he did not stop.

"Q. He did not? A. No, sir. * * *

"Q. Mrs. Levy, how far were you from the intersection of Creswell Street and Gladstone Boulevard, when you first saw the truck? A. I do not know how many feet.

"Q. Roughly? A. I would imagine that I was about thirty feet, would say I was outside of the intersection when I saw the truck driver.

"By Court:

"Q. Can you indicate some object in the Court room as being the distance? A. I would imagine that I was about as far as from here to that wall over there on the west side.

"By Mr. Goldstein:

"Q. Approximately thirty feet? A. Yes, sir.

"Q. To what extent did you continue to watch that truck driver after you entered the intersection? * * * A. As I said, I expected the truck driver either to slow up or stop at the intersection, as I do. * * *

"Q. Mrs. Levy, to what extent did you watch the truck driver, both at the time and up to the time you struck the tree? A. I was watching the truck driver to see if he was slowing down, to see if he was going to stop.

"Q. Did not take your eyes off of the truck? A. I do not think I did. I don't remember.

"Q. Were you still watching him, when your car stopped? A. I was still watching him as I passed him, I turned, I do not think I was watching him when I hit the tree. I do not remember what happened when I hit the tree.

"On Cross-examination:

"By Mr. Browne:

"Q. You were going at a very fast rate of speed, were you not, Mrs. Levy? A. I had slowed down.

"Q. You had not slowed down very much? A. I do not know how many miles.

"Q. Now you could not have been watching the truck driver and watching ahead of you? A. I was watching the truck when it came into the intersection of Creswell Street and Gladstone Boulevard. It all happened so quickly.

"Q. When you saw the truck driver, first saw him, he was thirty feet from you, you did not stop yourself? A. No, sir, I did not."

■ This is Mrs. Levy's entire testimony as to when she saw the truck and is convincing that she was not keeping a proper lookout. The record discloses that her view was unobstructed for at least seventy-five yards and possibly farther, and the only reason she did not see the truck sooner was because she did not look. It was her duty to look and to see on approaching the intersection, and to have put her car under control, reduced the speed, and have been prepared for an emergency such as happened. She did neither. She did not reduce her speed, did not have her car under control, and did not see the on-coming truck when she should have seen it. She is therefore guilty of negligence.

■ The record further discloses that, just as she saw the truck, when, we think, she was near the intersection, she put her brakes on, and the brakes took effect on one wheel only, as is demonstrated by the skid marks on the pavement. Mrs. Levy also at that very time exclaimed: "I can't stop!" realizing that her brakes were defective. This testimony was admitted without objection and must be considered by the court. We therefore conclude that the brakes on her car were defective, and that it was negligence for her to operate the car with defective brakes.

■ The near collision and accident that followed in avoiding the collision were brought about by the joint negligence of both defendants. The negligence of both was the proximate cause of the accident, and both are liable. If the truck driver had been keeping a proper lookout and had had his car under proper control, he could easily have succeeded in stopping his truck or in turning north on Gladstone boulevard, without running onto a curb. If Mrs. Levy had been keeping a proper lookout and had had her car under proper control, she could have stopped or turned east on Gladstone boulevard. Either or both could have averted the accident.

■ The emergency was created by the joint negligence of both defendants, and, in trying to extricate themselves from this emergency, the accident happened, and they are liable in solido for the resulting damage, unless the defense of contributory negligence urged by defendants can be sustained.

Defendants contend that plaintiff was guilty of contributory negligence in not insisting upon a reduction of the speed of the car driven by Mrs. Levy. The record discloses that when Mrs. Levy was traveling very fast, some seven or eight blocks before she reached the scene of the accident, Mrs. Driefus did protest, and that Mrs. Levy reduced her speed to twenty-five miles per hour. Mrs. Driefus testified that, after she requested Mrs. Levy to reduce her speed, she did so, and from then on was traveling at a natural rate of speed any driver would take. She did not attempt to fix the miles per hour. She further testified that she did not see the truck until the second before the accident. She was on the right of Mrs. Levy, who was three and one-half inches taller than she, and the truck entered the intersection from Mrs. Levy's left; therefore Mrs. Levy was between plaintiff and the truck, which would account for plaintiff not seeing the truck before she did.

The rate of speed of the Levy car was not such as to cause alarm to an ordinarily reasonable person and not such speed as to require plaintiff to protest further. The speed of the car is not shown by legal evidence to be in excess of the speed limit as fixed by ordinance, and it is not shown that plaintiff was aware of the negligence of her host. The speed was not ordinarily dangerous, and there was no vehicle in sight in front or to her right, and her vision of the on-coming truck was obstructed by her host.

■ To hold Mrs. Driefus guilty of contributory negligence, it must first be shown that she was aware of the negligence of her host, or that she, as an ordinarily prudent person, should have been aware of the negligence of her host, and that she remained silent and acquiesced therein. This the defendants have failed to do. Lorance v. Smith (La. Sup.) 138 So. 871.

■ It is incumbent on the defendants to prove the contributory negligence alleged, and they have failed. Mrs. Driefus protested when she thought her sister was driving negligently and her protest was heeded, and, although her host was negligent, as we have

held, it was not such negligence as an ordinarily prudent person riding with her would be aware of, under the circumstances. She could not know that her host was not keeping a proper lookout and she did not know of the defective brakes, and the speed of the car was not such as to cause alarm on her part. Therefore, the plea of contributory negligence is overruled.

The doctrine of last clear chance advanced by defendant Yarbrough has no application in this case.

■ The record discloses that a dress, of the value of $85, was ruined in the accident, and that plaintiff expended for nurses', doctor's bills and drugs the sum of $207, for which amount she is entitled to judgment and which was awarded her by the lower court.

■ For pain and suffering, mental anguish, permanent injuries, disfigurement of nose, and impairment of health, the lower court awarded plaintiff judgment for $1,000, which amount we think was inadequate and should be increased. Her nose was cut to the bone, and her left eye on the side had a large cut to the tear duct. Both wounds required stitches taken in them. She was confined to her bed for three or four days and for three or four weeks her face was bandaged up. For two months, she had to wear a bandage saturated with castor oil over both nose and eyes, for twenty-four hours each day, and for two months more wore these bandages at night, for the purpose of keeping the wound from healing without a scar.

Mrs. Driefus described her wounds as follows: "Well, I had a cut here (pointing) I had a cut on the nose, across the nose, beginning between the two eyes and all the way down the left side into the nose. I had a cut in the nostril, cut right there to the bone (pointing). I had a cut from the eye down here (pointing) cut to the tear duct. I had laceration on the right side of the face all the way down into my lip. I had a small cut right over the left eye, and I had a cut on my chin."

She suffered considerably for three or four weeks, especially with her nose, as she could not blow it. She was very much worried for fear the wounds would leave lasting scars, and she is a widow and admitted to be a pretty woman. Most of the wounds healed without leaving scars, but there is a slight disfigurement of the nose, and in cold weather the scar, near the left eye, becomes red and more noticeable than at other times. For about eighteen months prior to the accident, plaintiff had suffered from high blood pressure and had been under the treatment of Dr. Matas at New Orleans, who, for several months before the accident and up to the time of the accident, had reduced her blood pressure to 135 or 140. On the day after the accident, her blood pressure had increased to 182 and has remained from 165 to 182 ever since.

The medical testimony shows that the sudden increase in plaintiff's blood pressure was caused from excitement and shock, resulting from the accident, and that the increase in blood pressure has a tendency to shorten the life by affecting the heart and kidneys, and that such an accident as she had would be more serious to one in plaintiff's condition than to a normal person.

We think an adequate award would be $2,500.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court. in so far as it rejected the demands against Sam N. Yarbrough, be reversed, and, as to Mrs. Caro W. Levy, that the judgment be amended. It is therefore necessary to recast the judgment to read as follows:

It is ordered, adjudged, and decreed that plaintiff, Mrs. Gladys W. Driefus, have and recover judgment against the defendants Mrs. Caro W. Levy and Sam N. Yarbrough, in solido, in the sum of $2,792, with legal interest thereon from judicial demand until paid; and for all costs.