## BECKER v. UNITED STATES RUBBER PRODUCTS, Inc., et al. *

### No. 16737.

Court of Appeal of Louisiana. Orleans.

Oct. 17, 1938.

Hugh M. Wilkinson, A. Miles Coe, and Weiss & Weiss, all of New Orleans, for appellant.

Porteous, Johnson & Humphrey and Joseph F. Blasi, Jr., all of New Orleans, for appellees.

WESTERFIELD, Judge.

This suit is brought by Edward M. Becker in which he claims $10,000 as damages for physical injuries and $268 as property loss alleged to have been occasioned by the negligence of Frederick Heier, an employee of the United States Rubber Products, Inc., and, at the time of

*Rehearing granted, limited to a consideration of quantum, Oct. 31, 1938; writ of certiorari refused by Supreme Court Dec. 9, 1938.

the accident, the driver of a motor truck, belonging to his employer, which collided with a Chevrolet automobile belonging to and driven by plaintiff, at the intersection of Lowerline and Hickory streets, in the City of New Orleans, on October 27th, 1935. Heier and his employer are made defendants. Both defendants reconvened, the United States Rubber Products, Inc., claiming $520.16 as the amount of workmen's compensation paid Frederick Heier and the cost of repairs to its truck, and Frederick Heier claiming $6,000 as damages for physical injuries resulting from the accident.

The learned trial judge rendered judgment dismissing both the main and reconventional demands. All parties have appealed.

The plaintiff, Becker, testified that prior to the accident he was driving his Chevrolet automobile along Lowerline street in the direction of the Mississippi River at a speed not greater than twenty miles per hour; that when he reached a point about fifty feet distant from the intersection of Hickory street, he reduced his speed to fifteen miles per hour and subsequently to twelve miles when nearing the intersection; that when within ten or eleven feet of Hickory street he looked towards his right and saw a truck between 100 and 125 feet from the intersection traveling at a moderate rate of speed and, believing that he had ample time to cross, he attempted to do so but sometime before completing the crossing he became aware that the truck was bearing down on him when he accelerated his speed as much as possible in an unsuccessful effort to avoid the collision; that the truck struck his Chevrolet on the right front side and turned it over, the collision occurring when he had almost completed the crossing.

The defendant, Frederick Heier, testified that he was driving his truck along Hickory street from the direction of Carrollton avenue at a speed of not more than twenty miles an hour. He is uncertain whether he saw the Chevrolet before entering the intersection of Lowerline and Hickory streets. He says that when he entered the intersection he could see the small car (Chevrolet) coming at a rapid rate; that he applied his brakes and the Chevrolet turned to the left in an effort to avoid striking him, but when he had almost cleared the intersection, the rear of the Chevrolet sideswiped his truck causing both vehicles to turn over.

Lowerline street is a one-way street, the direction of traffic being from the lake towards the river. Hickory street is a two-way street. The intersection is called "a blind corner", there being a small house built up to the property line on the uptown lake corner which obscures the view of drivers on Lowerline street and those on Hickory street approaching from the direction in which the Heier truck was proceeding. Neither street has the right-of-way. The truck had the right-of-way under the traffic ordinance because the Chevrolet was entering the intersection from its left, by virtue of Article VI, Section 10 of Ordinance No. 13,702 C.C.S. which reads:

"(A) On all streets, except through streets and boulevards, and at intersections of right-of-way streets with one another, all vehicles approaching intersecting streets from the left shall give right-of-way to vehicles approaching from the right.

"(D) The right-of-way herein given shall not be construed to mean that vehicles may be driven through street intersections in a reckless manner or at a speed in excess of the limits fixed in Article V of this Ordinance, nor that they may take advantage of such right-of-way to drive through intersections regardless of the rights of vehicles on intersecting streets. The right-of-way given applies only where two vehicles approaching intersecting streets arrive at the intersection at approximately the same time, and does not authorize the vehicle traveling on the right-of-way street to disregard the rights of vehicles which have already entered the intersection from an intersecting street."

There were no passengers in either vehicle and the only witnesses to the accident other than the two drivers were by-standers.

Charles Julian, an employee of the Mack Tire Company, testifying on behalf of the plaintiff, stated that the truck passed him when about twenty-five feet from the corner of Lowerline street "at a pretty good rate" going "about thirty to thirty-five miles an hour". He did not see the impact, but heard the crash.

Emile Elliott, who lives in the house on the corner of the intersection, was sitting

in his kitchen, heard the crash and "seen them turn over".

Matty Whitaker did not see the actual impact but heard the crash. She testified as to the speed of the colliding vehicles before the accident, but her testimony is unreliable because she had previously given written and conflicting statements to each of opposing counsel.

Mary Morris testified for the defendant. She was certain that Becker's car, when near the intersection, was traveling at the rate of thirty-five miles per hour. She did not see the actual impact and was unable to say whether the Becker automobile struck the truck or vice versa. She had never driven an automobile, consequently her estimate of speed is subject to the criticism that it is not as reliable as one who was familiar with the operation of a car, for while it is possible to estimate the speed of a moving object without knowing the method of its propulsion, it cannot be doubted that in the case of an automobile, one who knows how to drive it is better able to judge of its speed than one ignorant of the method of its operation, particularly in view of the emphasis placed upon speed under all traffic regulations.

C. S. Fiduccio, another witness for the defendant, lives in the neighborhood of the accident. He testified that he did not see it, but that he did see defendant's truck when it was about three and three-quarters blocks or 1,000 feet from the intersection and that it was going at a speed of about twenty miles per hour. Ingenious counsel for plaintiff attempts to show that Fiduccio was mistaken as to the speed of the defendant's truck by his own testimony. For example, Fiduccio said that after seeing the truck he walked about one-quarter of a block (75 feet) before he heard the crash. Counsel asserts that a man ordinarily walks about four and one-half feet per second, and that at this rate of speed it took Fiduccio seventeen seconds to walk seventy-five feet. During the seventeen seconds that elapsed between the time Fiduccio first saw the truck and the time he walked the seventy-five feet and heard the crash, the truck, says counsel, must have covered 1,000 feet in order to collide with the plaintiff's automobile at the intersection. According to counsel's mathematics, the truck in order to cover 1,000 feet in seventeen seconds must have been going at the rate of forty miles per hour.

Other witnesses sworn on behalf of plaintiff and defendant throw little or no light on the accident except in respect to the position of the colliding vehicles after the accident and the damage sustained by each.

The result of our review of the supporting testimony is confusing since there is no preponderance either way. We, therefore, return to a critical examination of the testimony of the drivers of the colliding vehicles and to an examination of the physical facts. It will be recalled that Becker said that he saw the defendant's truck when between 100 and 120 feet distant from the intersection, and that the only reason why he did not avoid the collision was because he had misjudged its speed. Heier, on the other hand, is most uncertain as to when he first saw the Chevrolet. At one time he testified that he did not look and did not see Becker's car at all before entering the intersection and at another time he says that Becker was about fifteen feet from the intersection when he first saw him and at still another point, ten feet. He admits being able to see from 60 to 65 feet out Lowerline street when within fifteen feet of the intersection, but is under the impression that it was "not his duty to look all the way up that street". Heier, like Becker, claims to have almost completed the crossing when the collision occurred. Becker and Heier each claim to have been going very slowly and each charges the other with excessive speed in approaching the intersection. Heier, it is true, had the right of way under the traffic ordinance, but the right of way was conditioned upon the fact that both vehicles should reach the intersection at about the same time, Article VI, Section 10 of the Traffic Ordinance No. 13,702 C.C.S., and under no circumstances would it justify excessive speed or recklessness on the part of the favored driver. Article V, Section 3, subparagraph (b), relates to speed of vehicles under similar circumstances. It reads in part as follows:

"* * *

"Fifteen miles an hour, except on boulevards and through streets, when approaching within 50 feet of and in traversing an intersection when the operator's view is obstructed. An operator's view shall be deemed to be obstructed when at any time during the last fifty feet of his approach

to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the streets entering such intersection for a distance of 100 feet from such intersection."

After the accident both vehicles were found lying on their left side on, what is called, the downtown river corner of the intersection, the Chevrolet being on the sidewalk and the truck almost contiguous to the curb. The truck was a much heavier vehicle and, if both were going at the same speed when the collision occurred, might be expected to push the lighter car in the direction in which it was traveling. While this is true, it cannot account for the distance and apparent violence with which the Chevrolet was driven practically across the width of Lowerline street and onto the sidewalk unless the truck was going at a much faster pace.

The damage sustained by the defendant's truck, except that resulting from its overturning, appears from the photographs, which are in evidence, to be on its left front side, while that sustained by the Chevrolet was on its right side about midway between the front and rear indicating that the left front of the truck struck the middle of the right side of the Chevrolet. If this be true, it would tend further to corroborate the statement of Becker as to the manner in which the accident happened.

We feel that Heier was negligent in another respect in that he failed to maintain an adequate lookout. If he had looked out Lowerline street when within fifteen feet of the corner, according to his own testimony, he could have seen the plaintiff's automobile at a distance of sixty feet. This, for some reason, he did not do, perhaps relying upon his having the right of way in the mistaken belief that the right of way conferred a greater prerogative than the law contemplates. Dunbar v. Kaul, 12 La.App. 605, 126 So. 705; Vance v. Poree, 5 La.App. 109.

Our conclusion is that Becker should recover. We find no merit in the plea of contributory negligence.

Becker sustained a cut on his right forehead, bruises to his chest and body, a black eye and a laceration of his right leg below the knee with "echymoses" of both thighs. He was in bed several days and absent from his work about three weeks. He paid a doctor's bill of $35 and expended $218 for the repair of his automobile, ruined a suit of clothes and a hat valued at $15. For his injuries and expenses we believe he should be allowed $768. Much is made of the fact that the wound on his forehead left a scar which will be more or less permanent. Becker testified that this scar was a constant source of embarrassment and that it interfered with him in his business of soliciting and selling insurance, because the eyes of his prospective customers were always fixed on his scar causing him to abandon his "line of thought". We are referred to numerous cases in which sums ranging from $1,250 to $3,000 were awarded for disfigurement resulting from scar tissue. All of these cases, Dyess v. Landry, 15 La.App. 403, 132 So. 242; Crutsinger v. Avery & Sons, La.App., 152 So. 361; Driefus v. Levy, La.App., 140 So. 259; Escalante v. Richard, 14 La.App. 580, 130 So. 567; Donnow v. Toye Bros. Yellow Cab Co., La.App., 154 So. 494, and Christos v. Manos, 16 La.App. 512, 134 So. 713, involve disfigurement of women by scars on their face, head or neck and are not applicable here. In the first place, the scar on Becker's forehead, though quite visible, is not a disfigurement as we appreciate the situation from his photograph which has been offered in evidence, and the testimony of his physician. It may constitute a cosmetic blemish, but we fail to understand how it could have such disastrous effects upon his business as has been suggested. Our belief is that any insurance prospect who fails to give Mr. Becker his business because of the scar on his forehead would not have given it to him anyway and, on the other hand, we believe that if Becker's train of thought is derailed by furtive glances at his forehead by the prospect he is seeking to sell, it is far too unstable in the first place to reach its desired destination. We do not wish to imply that a male can not recover damages for disfigurement, but simply to say that there must first be a disfigurement and that there is a difference between men and women in degree, as well as in kind of facial blemish or cosmetic deficiency which would constitute a disfigurement.

From the view we have taken of the case there is no need to consider the reconventional demands of the defendants.

For the reasons assigned the judgment appealed from is annulled, avoided and re-

versed insofar as it runs against Edward M. Becker and it is now ordered that there be judgment herein in favor of the plaintiff, Edward M. Becker, and against the defendants, United States Rubber ʃProducts, Inc., and Frederick George Heier, in solido, in the sum of $768, together with legal interest from judicial demand until paid. The judgment in all other respects is affirmed.

· Affirmed in part; reversed in part.