**LAW v. KANSAS CITY BRIDGE CO., Inc.**

No. 2165.

Court of Appeal of Louisiana. First Circuit.

Dec. 12, 1940.

Rehearing Denied Jan. 14, 1941.

Writ of Error Refused March 3, 1941.

Jos. A. Gladney, of Baton Rouge, for appellant.

Breazeale & Sachse, of Baton Rouge, for appellee.

DORE, Judge.

This is a suit for workman's compensation, wherein plaintiff alleges that on March 17, 1938, and several months prior thereto, he was employed by defendant as a carpenter in the construction of the bridge over the Mississippi River at Baton Rouge; that his wage was 85¢ an hour, 8 hours per day, 6 days per week and that he never worked less than 44 hours per week; that on March 17, 1938 while carrying concrete sleeves and rods from one location to another, the heel on his left foot was accidently caught in a crack of a platform causing him to lose his balance and to fall to the ground, "where he landed flat on his back"; that he thereupon rested some fifteen minutes, becoming sick to his stomach and vomiting, but that despite his injury and the fact that he was sore and bruised and was seen to urinate blood, he continued to do his work the best he could until April 2, 1938, when due to pain and his inability to do his work properly he was forced to leave his employment; that he laid off and rested and treated his back until April 8, 1938, at which time he reported the accident to Charles Donovan, defendant's superintendent or office manager, who made an investigation and sent him to Dr. Clarence A. Lorio, the company physician; that Dr. Lorio and his assistant, Dr. Nelken, treated him for a period of about 6 weeks, when he was released to report for light duty; that upon reporting he was informed by Mr. Donovan that there was no light work to be done and that he could only put him back at heavy work; that consequently plaintiff did not resume his job. He alleges that his low back is stiff, sore, and weak; that he suffers pain; that the right side of his neck and the upper portion of his back is sore and hurts, and that his present condition is such as to render him permanently disabled from performing any work for which he is fitted by training and experience.

In a supplemental and amended petition, plaintiff avers, on information and belief, that as a result of the accident he developed an arthritic condition of the back, or that a pre-existing but dormant arthritic condition was activated by the accident, and he alleges further, also on information and belief, that the accident caused a nephritic condition, or activated a dormant nephritic condition.

Plaintiff claims compensation in the sum of $8,000; that is for a period of 400 weeks at the rate of $20 per week, commencing April 2, 1938, with legal interest, plus $250 for medical expenses.

The defendant admits that plaintiff was employed by it at the time alleged, but de-

nies that he was employed on a basis of 6 days per week and 8 hours per day or that he never worked less than 44 hours per week. Defendant also denies that plaintiff was injured as alleged, or that he ever suffered from any disability resulting from any accident occurring in the course of his employment.

The District Court rendered judgment in favor of defendant, dismissing plaintiff's suit. The plaintiff has appealed.

The facts in the case as shown by the evidence appear to be as follows:

On March 17, 1938, plaintiff was engaged in carrying bolts weighing from 65 to 70 lbs., when, while crossing a wooden platform, the heel of his shoe got caught in a crack and caused him to fall. The testimony as to the seriousness of the fall is not clear and is contradictory. There is some testimony to the effect that he fell heavily and that he immediately felt sudden and sharp pain in his back, became nauseated, and thereafter for several days blood was apparent in his urine. On the other hand, it is testified that the fall caused laughter among his fellow employees, and that apparently he had suffered no serious injury. In any event, plaintiff resumed his work shortly after his fall and continued to work until about April 2, when he laid off and rested at home until April 8, when he reported his condition to Mr. Donovan, who sent him to Dr. Lorio, the company doctor, for treatment.

Dr. Lorio testifies that he examined plaintiff on April 8, 1938, and found that he was suffering from muscle strain in his back, and gave him light-ray treatments for this trouble regularly from April 8 to May 21, 1938, and advised the company that he intended to discharge plaintiff to begin May 24, 1938.

It appears clearly from the evidence that plaintiff suffered a strained back as a result of his fall, and was unable to do any work from April 8 to May 24, 1938, a period of about 7 weeks, according to the company doctor, when he could return to work. It is admitted that no work was given to plaintiff when he reported back to the company on or about May 24, 1938, and it is also admitted that no compensation was paid to him up to that date or at any time.

It appears that subsequently plaintiff employed attorney John Fred Odom to prosecute his claim, and that this attorney had his client examined by Drs. Voss, Chamberlain and Kidwell, in October and December, 1938, and after some discussion of a compromise, the client became dissatisfied, or the attorney no longer cared to handle the case, and the case was thereupon placed in the hands of attorney Gremillion, who associated attorney Cadwallader with him, and filed the suit for plaintiff on February 1, 1939. It appears that a few days after filing the suit, attorney Gremillion had his client examined by Dr. McVea, and that Dr. McVea found plaintiff was suffering from high-blood pressure, chronic nephritis, pyelitis, pyorrhea and chronic arthritis. The doctor found subjective symptoms of pain in plaintiff's back but he found reason to ascribe this pain to arthritis or neuritis from the pyorrhea, the kidney disease or infection in his urine, rather than from injury sustained in his back by the fall. The doctor recommended an X-ray of the spine to ascertain the cause of plaintiff's pain in the back.

It is probable that because of this report of Dr. McVea, attorneys Gremillion and Cadwallader lost faith in the case. In any event, the case was placed in the hands of attorney Gladney, plaintiff's present counsel, who filed the supplemental petition and had plaintiff examined by Dr. McHugh, who reported his findings and recommended that an X-ray be made of plaintiff's kidneys. The X-ray of the kidneys was made and a stone was found in the left kidney.

It is practically conceded now that the plaintiff does have a rather large kidney stone in his left kidney and that this may be the principal, if not the sole cause, of the pain which he says he now suffers in his back. Drs. McHugh, Hargrove and LaNasa testified that the stone could have been in the calyx and dislodged by the violence of the fall sustained by plaintiff; but, as found by the trial judge, the testimony shows that, since the accident, plaintiff had been doing considerable drinking and carousing and had been involved in one or more fights, brawls and horse play, calling for violent exercise, and it is just as probable that the kidney stone was dislodged during that time as by the fall sustained on March 17, 1938. This latter probability is strengthened by the fact that when plaintiff reported to Dr. Lorio on April 8, 1938, some 21 days after his accident, he complained of no symptoms indicating kidney disorder, such as the alleged passing of

blood in his urine, but complained merely of injury to his back.

It is noted that Dr. Bevin made a blood test of plaintiff on February 23, 1940 and found him suffering from syphilis; that both Dr. Lorio and Dr. Williams testified that X-rays of plaintiff's spine showed no evidence of fracture or dislocation.

It is also noted, as observed by the lower court, that Drs. Voss, Kidwell and Chamberlain were not called as witnesses, and we agree with the trial judge that plaintiff's failure to call them, with no explanation as to such failure, indicates that their testimony would have been adverse to him.

We agree with the lower court that the many contradictions in the testimony with reference to the type of accident suffered, and plaintiff's reactions thereto and his symptoms before and after the fall, and with reference to his actions thereafter, have injected so many complications into the case as to make it well-nigh impossible to separate the false from the true. However, while it is our opinion that plaintiff has failed to establish to that legal certainty required that his present condition, which appears to be caused principally by a kidney stone, is attributable to the accidental fall sustained by him on March 17, 1938, we do feel that the evidence shows that he sustained a strained back as a result of such fall which rendered him totally disabled for a period of approximately 7 weeks. That finding is amply supported by the testimony of the defendant's doctor to the effect that he treated plaintiff from April 8 until about May 24, 1938 for muscle strain of the back.

It is our conclusion that plaintiff should recover compensation for the proven period of his disability arising from the accident, which we find to be a period of 7 weeks.

It is our further conclusion that this compensation should be at the rate of $20 per week, since it is shown that 65% of plaintiff's weekly wage was at least that sum.

It is our further conclusion that the medical experts, Drs. Williams, McHugh, Hargrove and LaNasa, who testified in the case, are entitled to a reasonable witness fee, which we fix at the sum of $15 for each.

For these reasons assigned, it is ordered that the judgment of the District Court is reversed, annulled and set aside; that there now be judgment in favor of plaintiff and against defendant, awarding plaintiff compensation at the rate of $20 per week from April 8, 1938, for a period of 7 weeks, with 5% interest on each week's payment from its due date, until paid; and all costs, including witness fee in favor of Drs. Williams, McHugh, Hargrove and LaNasa, in the sum of $15 each.