The plaintiff, a colored man about 29 years of age, was injured shortly after two o'clock in the afternoon of August 18, 1939, while he was loading coal onto one of the ferries of the Baton Rouge Transportation Company engaged in transporting vehicular traffic across the Mississippi River between Baton Rouge and Port Allen. He was standing near a pile of coal on the east bank or levee of the river some fifteen or twenty feet north of the ferry landing or gangway from which traffic came off the ferryboat, and was struck by a trailer or welding machine attached to a truck and trailer operated by one Clifton Williams, an employee of the Yaun Welding Boiler Company of Baton Rouge. He received a comminuted fracture of both bones of the left leg between the knee and the ankle.
Plaintiff sued Clifton Williams, the driver of the Yaun truck, and the New Amsterdam Casualty Company, the public liability insurance carrier on the truck and trailer, for damages in the sum of $10,000, consisting of $3,500 for physical pain and suffering and mental anguish, and $6,500 for disability on account of permanent injuries to his left leg. The American Mutual Liability Company intervened in the suit and alleged that it had paid and was paying compensation insurance to the plaintiff for his employer and joined with the plaintiff in seeking to hold defendants liable for the injuries received by him in the accident and asked for judgment against both plaintiff and defendants in a sufficient amount to reimburse it for all the amounts it had paid and would be required to pay plaintiff for compensation and medical expenses on account of said injuries and resulting disability.
There was judgment below in favor of the plaintiff and against the defendants, in solido, for $4,000, with interest, awarding three doctors who testified in the case expert witness fees of $25 each. There was also judgment in favor of the American Mutual Liability Insurance Company and against the defendants and the plaintiff for $673.40 to reimburse it for compensation paid plaintiff up to January 18, 1941, and for such additional amount as it may be obligated to pay plaintiff for compensation subsequent to the above date, together with the sum of $86.53 to reimburse said company for medical expenses which it had become obligated to pay on account of plaintiff's injuries and such other medical expenses up to $250 which it might be required to pay, plus the sum of $100 for attorneys' fees. Defendants have appealed, and the plaintiff answered the appeal asking that the amount of the judgment in his favor be increased to $6,000.
Plaintiff claims that the accident was caused by the negligence of Williams, the driver of the Yaun truck, in coming off the ferry landing at an excessive speed, turning sharply to his left toward the place where plaintiff was standing, then cutting back to his right, causing the trailer or welding machine attached to the trailer to strike him on his left leg resulting in the injuries aforementioned; that said driver was guilty of negligence in failing to see plaintiff standing near the coal pile with his face turned in the opposite direction toward traffic coming down to the ferry and while he was directing this traffic; that said driver of the truck could have avoided the accident by driving to his right where there was ample room and where traffic coming off the ferry was supposed to drive. Plaintiff denies any negligence on his part, but avers that if he was guilty of any negligence, the driver of the Yaun truck had the last clear chance to avoid the accident.
Defendants deny any negligence on the part of the driver of the truck; they aver that the proximate cause of the accident was the negligence of the plaintiff in placing himself in a dangerous position and in not keeping a proper lookout and in failing to take proper precautions for his own safety. Defendants plead the contributory negligence on the part of the plaintiff as a contributing cause of the accident.
The Yaun truck with the attached welding machine was the only vehicle to come off the ferryboat as it pulled up to the landing. This truck had gone onto the boat to take off the welding machine which had been used on the boat the previous night by the Yaun company in making some repairs on the boat, and the boat had pulled up to the landing for its first trip that day. There were a half dozen cars or so standing in the roadway on the levee or ramp leading down to the landing waiting to *Page 441 
drive onto the ferry. The roadway leading from the landing runs in a northerly direction up the east side of the river bank, thus requiring a vehicle coming off the ferryboat to turn to its left when it clears the pontoon between the bank and the boat. Vehicles coming off the boat are required to drive to their right and along that part of the roadway farthest from the river and those coming onto the boat drive to their right and on that part of the roadway nearest the river bank. The coal pile near which plaintiff was standing was near the west or river side of the roadway and from 15 to 20 feet from the point where vehicles come onto the roadway from the boat. The roadway is wide enough for two cars to pass without any difficulty.
Plaintiff testified that while he was shoveling coal from this pile into a wheelbarrow, some one on the boat called to him to hold the traffic coming down to the boat until the truck and welding machine could get off the boat; that he saw the truck coming off the boat as he turned his head in the opposite direction to flag oncoming traffic with his hand; that he was only a few feet from the coal pile and did not move in his tracks and assumed that the truck would keep to its side of the road opposite from where he was standing; that the truck or some part of the welding machine struck him while he had his face turned toward oncoming traffic with his back to the truck and he was knocked down just as he was flagging oncoming traffic to come onto the ferry.
Two or three witnesses working on the boat or near the coal pile corroborate plaintiff in his statement of the occurrence in practically all of the important details. The evidence is clear that the driver of the truck came off the ferry at a rather fast speed, made a sharp cut to his left and then turned sharply back to his right to go to the right of the parked cars on his left waiting to come onto the ferry. It was while he was making this sharp right turn back to the right in order to get on his side of the roadway that the trailer or welding machine which his truck was pulling struck plaintiff on his left leg, knocking him down and causing the injuries complained of.
The driver of the truck himself admits that he turned to his left as he came off the runway leading from the ferry, but he says that the reason he did not keep to his right was because of some bad holes in the road just off the runway. He says that when he passed these holes he pulled back to his right to miss the string of cars on his left waiting to come onto the ferry. He did not see plaintiff nor any of the other men standing near the coal pile, and, in fact, did not know that he had struck anyone until several minutes later when someone came to the Yaun shop and told him of it.
We have no hesitancy in reaching the conclusion that the cause of the accident was the negligence of the driver of the Yaun truck in cutting too sharply to his left in coming off the ferry and in his failure to keep a proper lookout for plaintiff who was standing on the opposite side of the roadway from that which the truck driver should have been on as he went up the ramp. Neither do we find where plaintiff was guilty of any contributory negligence. He was standing well to the river side of the roadway and had no reason to assume that the truck would come over on its wrong side of the road and strike him. It is true he did not see the truck just before it struck him nor was he looking in the direction from which it was coming. He was facing oncoming traffic on that side of the road where he was standing which required him to give his attention to that traffic because he was flagging that traffic and was required to take the necessary precautions to keep out of the way of vehicles coming down to the ferry on that side of the roadway.
The trial judge correctly found the truck driver and the insurance carrier liable for the damages sustained by plaintiff in the accident. The correctness of the award is seriously questioned by both plaintiff and defendants, the former insisting that the amount should be increased to at least $6,000 and the latter contending that the amount should be reduced to at least $2,500.
There is no fixed rule by which to determine the amount of an award for a personal injury. The courts are left considerable latitude in fixing the amount of an award and are governed by the particular facts in each case. Some of the most important factors to be considered are the extent of the pain and suffering, duration of confinement and treatment, loss of time, impairment of earning capacity and the temporary or permanent nature of the injury and resulting disability. Similar injuries in other cases are used as a guide and uniformity is sought in making *Page 442 
awards as much as the facts and circumstances will permit in each case in order that the various awards may not be too much out of proportion.
Plaintiff was earning $14 per week. He is only qualified for doing manual labor, the only kind of work he was accustomed to doing. He sustained a comminuted fracture of both the tibia and fibula of his left leg with displaced fragments above and below the fracture. We understand that this is one of the worst forms of fracture and it is rather difficult in most cases to get a perfect union of the bones on account of the displaced bone fragments. Plaintiff remained in the hospital for nearly a month and after leaving the hospital, he was confined to his bed for some three weeks. After that he was able to get about on crutches for about seven months after which he used a stick and was still using a stick some at the time of the trial about nine months after the accident. His ankle swells and his leg causes pain when he stands on it for a considerable length of time. Of course his fractured leg was set and kept in a cast for a considerable time.
All of the doctors who testified in the case agree that plaintiff was unable to do hard manual labor at the time the case was tried. They do not altogether agree as to when he will be able to do hard manual labor nor as to the extent that he will be disabled permanently on account of the injury. They pretty well agreed as to the condition of plaintiff's leg just before and at the time of the trial, that his left leg is one half to one inch shorter than the other; that there is a bulge at the point of the fracture caused from excessive bone formation; that there is an angulation of the leg causing a rotation of his ankle inward, giving him a kind of flat foot and sluefootedness in his left foot. These conditions will remain but will be improved some in the course of time, and plaintiff will get more and more adjusted to the shortness of his leg and the turning outward of his left foot. It appears, however, that there is a permanent disability of the left leg between 15 and 20 per cent.
In the case of Bourgeois v. Longman, 199 So. 142, we awarded the plaintiff $2,500 for pain and suffering and injury to his leg, plus $564 for loss of time. The injuries to his leg were somewhat similar to those of the plaintiff in this case, except that the permanent disability to his leg was fixed at 10 per cent, while in this case the permanent disability to plaintiff's leg is estimated from 15 to 20 per cent. The wages of both plaintiffs were practically the same but, while the plaintiff in the former case was disabled from work 47 weeks, the plaintiff in the present case has been and probably will be unable to return to his work for a longer time. Considering all the facts and circumstances in the case, we see no reason to change the award made by the trial judge.
Counsel for defendants mention the fact that there is no evidence to support the claim of the intervenor for $86.53 for medical expenses. We find that to be true, however, as this amount is decreed to be paid the intervenor out of the amount awarded plaintiff for damages to him, and as this is a matter purely between the intervenor and plaintiff and cannot affect the liability of the defendants, we see no reason to disturb the judgment as to this item. It appears that plaintiff is making no complaint concerning the allowance of this item out of the damages due him, and the defendants have no interest in objecting to its allowance.
Defendants also object to the allowance of $25 each to three doctors who testified in the case as experts, and we are asked to reduce these fees to $15 each in line with the allowance which we made for expert witness fees in the case of Law v. Kansas City Bridge Co., Inc., 199 So. 155. In that case we did not intend to fix, and did not fix, a rule as to the amount of expert witness fees in all cases. These fees depend so much on the time lost by the experts, the extent of their examination, the importance of the matters on which they express an opinion, and many other factors, that no rule can be fixed as to the amount to be allowed in all cases. The trial judge is in a much better position to fix these fees than an appellate court, and the amount fixed by him will not be disturbed unless it appears to be manifestly excessive or insufficient.
For the reasons assigned, the judgment appealed from is affirmed at the costs of defendants in both courts. *Page 443