McBRIDE, Judge.
This case and that of Schouest v. Loewenthal, La.App., 58 So.2d 425, in which an opinion and decree was handed down by us this day, were consolidated and tried together. Both suits arose out of the same automobile accident.
This appeal presents for consideration the suit brought by Niagara Fire Insurance Company, the subrogee of Otto R. Loewen-thal, seeking to recover of Anatole Schouest the sum of $280.93, representing the damage sustained by Otto R. Loewenthal’s automobile as a result of the accident. The Niagara Fire Insurance Company has appealed from the judgment below dismissing its demands on the merits.
Involved in the accident, which happened at Napoleon and South Claiborne Avenues on April 30, 1948, at about 7 o’clock, p. m., were the automobiles of Otto R. Loewenthal and Anatole Schouest. The Loewenthal automobile was driven by the brother of the owner, Harold Loewenthal; Schouest was driving his automobile. It is charged in the petition that Schouest was guilty of negligence in several specified particulars; the answer denies negligence.
*740 Napoleon Avenue is a wide boulevard running from the Mississippi River toward the lake, and South Claiborne Avenue is an extremely wide boulevard running from Canal Street to the upper edge of the city, intersecting Napoleon Avenue at right angles. On each oí these boulevards are two lanes for traffic, separated by a wide neutral ground upon which are located trolley car tracks.
Harold Loewenthal was driving down South Claiborne Avenue, and braked to a stop before entering Napoleon Avenue, in obedience to a red traffic semaphore signal. When a favorable light appeared, Harold Loewenthal drove the automobile across the upper traffic lane of Napoleon, across the neutral ground, and then turned left into the traffic lane on Napoleon Avenue which accommodates vehicular traffic moving in the direction of the lake. After making the left-hand turn into Napoleon Avenue, Harold Loewenthal continued driving onward at a rate of speed of about 20 to 22 miles an hour, and in attempting to cross the intersection formed by the traffic lane in which his automobile was traveling and the traffic lane on South Claiborne Avenue used by traffic traveling uptown, the Loewenthal automobile came into collision with the Schouest car, which was being driven in an uptown direction. Each driver seeks to place blame on the other.
The trial judge, in his written reasons for judgment, had this to say:
“In my opinion this accident happened solely through the fault and negligence of * * * Harold Loewen-thal, in driving through a red light. I find no fault or negligence on the part of (Schouest). * * *”
Schouest and his witnesses say that he attempted to cross Napoleon Avenue on a green lig'ht. Harold Loewenthal, disputing this, claims that the green light was favorable for traffic on Napoleon, and that it was he who entered the intersection on the green light.
Schouest was positive that he entered Napoleon Avenue about twenty-five feet or so behind another automobile, and that both he and the car ahead of him entered Napoleon Avenue on the green light. The point of collision was about the middle of the intersection formed by the two traffic lanes; the front of the right-hand side of the Loewenthal car contacted the front of the left-hand side of Schouest’s car.
The testimony of Schouest, it seems to us, has more of the ring of truth than that of Harold Loewenthal. It must not be overlooked that Loewenthal claims he stopped at Napoleon Avenue and only started across when the signal light changed to green. 'If this is so, then the light for traffic on Claiborne Avenue must have still been showing green when Loewenthal made the left-hand turn into Napoleon Avenue, the traffic on which necessarily faced a red light. We can find no evidence in the record to the point that the signal light changed from red to green on Napoleon Avenue at any time before Loewenthal reached the lane in which the Schouest car was traveling, and we feel certain that Loewenthal moved along Napoleon Avenue into the intersection in the teeth of a red light. Flanagan, appearing as a witness for Schouest, testified that he had stopped his automobile on the far side of Napoleon Avenue awaiting a favorable green light, so that he could proceed in Napoleon Avenue, and that the accident happened before the favorable signal appeared for traffic on Napoleon Avenue. This demonstrates that Loewenthal failed to heed the signal.
Nothing can be found in the 190 pages of testimony adduced at the trial which would lead an impartial mind to a belief that Schouest was guilty of negligence, either primary or contributory. -He was driving at a lawful rate of speed, and followed another car into Napoleon Avenue on a favorable green light. With the Loewen-thal car’s sudden entry into the intersection, Schouest endeavored to avoid an accident by swerving towards his right, but to no avail. Then too, we are convinced that there was a streetcar on Claiborne Avenue at the intersection, the presence of which interfered with Schouest’s view of Napoleon Avenue toward hi's left. Under those circumstances, he had the right to proceed to a negotiation of the intersection on the favorable green light, and he was not at *741 fault in not seeing the automobile of Lo_e-wenthal. Under the traffic light system, a motorist who proceeds on a proper signal should not be held to the same degree of care as if such system did not prevail, and he is within his rights in assuming that the signals will be understood and observed 'by others. See Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292.
The judgment appealed from be and it is hereby affirmed.
Affirmed.