94 So.2d 564 (1957)
Edmond WHITE, Jr., Plaintiff-Appellee,
v.
The TRAVELERS INSURANCE COMPANY et al., Defendant-Appellant,
Fidelity & Casualty Company of New York, Intervenor.
No. 8644.
Court of Appeal of Louisiana, Second Circuit.
March 27, 1957.
Rehearing Denied April 26, 1957.
Theus, Grisham, Davis & Leigh, Monroe, for appellant.
Blanchard, Goldstein, Walker & O'Quin, Shreveport, for intervenor.
Jackson & Reynolds, Homer, for appellee.
AYRES, Judge.
This is an action ex delicto wherein plaintiff seeks to recover damages for personal injuries sustained in an intersectional collision *565 occurring in the Town of Haynesville, Louisiana, between a Chevrolet pick-up truck driven and operated by plaintiff at the time for his employer, a wholesale oil and gasoline distributor, and another pick-up truck of Galloway-Carson Construction Company, operated at the time by Johnnie Lyons, its agent and employee.
The Fidelity & Casualty Company of New York, plaintiff's employer's workmen's compensation insurer, intervened and sought reimbursement of the compensation paid plaintiff and the medical expenses incurred as a result of his injuries, aggregating $474.
From a judgment awarding plaintiff damages in the sum of $3,500 and directing that the intervenor be reimbursed therefrom the aforesaid compensation and medical expenses, together with an attorney's fee in the sum of $50, both plaintiff and defendants appealed. Plaintiff contends the award is inadequate and should be increased to $5,063. Defendants contend, if there is any liability, the award is excessive and should be reduced to $1,121.
On the question of liability there is only involved defendants' plea of contributory negligence as it is conceded that the evidence sustains the finding of the trial court of negligence on the part of defendant's driver constituting a proximate cause of the accident.
The facts as to the occurrence of this accident may be briefly stated. The accident occurred at the intersection of U. S. Highway 79 and McDonald Street in the aforesaid municipality. Traffic at this intersection is controlled by the usual traffic signal lights. According to the testimony of those who witnessed the accident, defendant's driver was proceeding on Highway 79 at a speed of approximately 50 miles per hour as he approached the aforesaid intersection and that, although he had an unfavorable or red light, he made no effort to check his speed and slow down but proceeded forward into the intersection, despite the fact that plaintiff, proceeding on McDonald Street, had entered the intersection on a favorable or green signal. When plaintiff was some 20 to 30 feet from the intersection he saw defendant's truck approaching at some distance away at a speed estimated by him at 50 miles per hour, but, being of the opinion the driver would obey the traffic signal, slow down and stop, plaintiff proceeded into the intersection, and, on reaching a point approximately midway thereof, his truck was struck by defendant's truck. Following the accident, plaintiff's truck came to rest on the west side of the highway, defendant's on the east side.
There is no showing after plaintiff saw and realized, or after he should have seen and realized that defendant's truck was not going to stop at the intersection so as to comply with the red signal light, he had time and opportunity to make an effort to do anything effective, such as applying his brakes, swerving his vehicle and taking another course in order to prevent the accident. Under the traffic light system a motorist proceeding on a proper signal should not be held to the same degree of care as if no such system prevailed but he is entitled to assume that the signals are understood and will be observed, and he is not required to anticipate that other motorists or pedestrians will, in violation of law, enter an intersection on an unfavorable signal. This principle is predicated on the proposition that the danger at such intersections is less than if there were no such signals and, there being less danger, less care is exacted.
Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Niagara Fire Ins. Co. v. Schouest, La.App., 58 So. 2d 739; Clark v. De Beer, La.App., 188 So. 517, 520; Roll Osborne & Sons, Inc. v. Howatt, La.App., 167 So. 466, 469; Buckley v. Featherstone Garage, Inc., 11 La.App. 564, 123 So. 446, 450.
Under the circumstances of this case, plaintiff, therefore, was not bound to anticipate the negligence of defendant's driver *566 in proceeding into the intersection against an unfavorable signal light. The importance of the observance by motorists of the rules and regulations pertaining to motor vehicular traffic in the interest of safety was emphasized by the Supreme Court in Kientz v. Charles Dennery, Inc., supra, in quoting from a dissenting opinion of the Court of Appeal in the same case, where it was stated:
"We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributed to one, who was operating his car in obedience to positive law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred." 17 So.2d XXX-XXX-XXX.
We are not convinced from the record as made up that plaintiff was guilty of such a dereliction of duty, or, in fact, any dereliction of duty at all that, without it, the accident would not have happened. We find no merit, therefore, in defendant's plea of contributory negligence.
Our consideration is next directed to the principal issue presented for determination, that is, the question of the quantum of award. Plaintiff is a 55 year old negro man, of good reputation and with a good work record. As the result of the accident he sustained a cerebral concussion and a fracture of the 8th and 9th ribs on his left side, together with assorted bruises and contusions. Plaintiff, immediately following the accident, was rendered unconscious for a period of approximately four hours, was hospitalized for about seven days, and was totally disabled for the performance of his work for at least 14 weeks, during which time he was paid compensation.
The accident occurred September 20, 1955, and the trial was had June 15, 1956, at which time plaintiff continued to complain of pain and a resulting disability to perform manual labor. Plaintiff was hospitalized in the Haynesville hospital and was there examined and treated by Dr. C. O. Wolf. A report from the hospital filed in evidence showed a diagnosis of cerebral concussion, mild contusions of the left lower chest, lower anterior.
Dr. Wolf was the only physician who examined and treated plaintiff from the date of the accident until November 22, 1955, when, at the request of plaintiff's employer's compensation insurer, he was examined by Dr. Gene D. Caldwell, who, later, on February 11, 1956, made a second examination of plaintiff at the request of his attorneys, and subsequently, on May 29, 1956, at the request of defendant's counsel, he made a third examination of plaintiff. Dr. S. A. Tatum examined plaintiff May 18, 1956, and continued treatment of him from that date until the date of trial.
Dr. Wolf was not called as a witness on plaintiff's behalf notwithstanding that, pursuant to interrogatories directed to plaintiff and answered by one of his counsel, it was stated he would be called. Under this state of facts, defendant strenuously urges that plaintiff's failure to call Dr. Wolf as a witness, or to take his testimony, be construed against him and that we invoke the presumption of law that such testimony, if taken, would have been adverse to plaintiff's interest. This principle of law was recognized and given effect by us in Walker v. Monroe, La.App., 62 So.2d 676, 678, where we stated:
"Because of plaintiff's failure to secure the testimony of the five physicians who examined him at his own request, *567 and in the absence of some explanation for their non-appearance at the trial, it must be presumed that such testimony would be adverse to plaintiff. Law v. Kansas City Bridge Co., Inc., La.App.1940, 199 So. 155; Miller v. Anderson-Post Hardwood Lumber Co., Inc., La.App.1941, 3 So.2d 196; Thomas v. Maryland Casualty Co., La. App. 1947, 32 So.2d 472; May v. Cooperative Cab Co., La.App.1951, 52 So. 2d 74."
In oral argument, plaintiff's counsel, evidently aware of the aforesaid presumption, explained the failure to secure the doctor's testimony because his testimony would have made no substantial addition to the facts as otherwise established by the record, particularly in that it was stated the doctor did not find upon his examination that plaintiff had sustained the fractured ribs. In view of this fact, and in view of the further fact that the testimony of Dr. Gene D. Caldwell, who examined plaintiff first on behalf of the intervenor, then on plaintiff's own behalf, and, lastly, on behalf of the defendant, is contained in the record, we deem it unnecessary to remand the case for the purpose of taking the testimony of Dr. Wolf. It is, therefore, observed that Dr. Caldwell's testimony was relied upon by all parties at interest in this cause.
Dr. Caldwell, who qualifies as an orthopedic surgeon, on his first examination found that plaintiff had sustained fractures of the 8th and 9th ribs on his left side, healing of which was incomplete at that time. No permanent disability was anticipated but it was thought that within four to six weeks thereafter plaintiff's recovery would be complete. Fractures of ribs were said by the doctor to produce severe pain, and on the occasion of his first examination pressure applied to the affected areas produced pain. On the second examination the fractures were found to be healed and plaintiff's recovery complete, except as to plaintiff's complaint of pain, for which the doctor could find no basis. On the third examination the doctor again found no objective symptoms of any injuries or residual disability, and, from tests made, concluded that plaintiff was neither suffering pain nor disability.
Dr. S. A. Tatum was of the opinion, based on his examinations and information gained through treatment of plaintiff over a period of a few months, that in the healing of the fractures the nerves adjacent to the fractures may have become imbedded in the callus formations surrounding the fractures, which he said could have produced the pain from which plaintiff continued to complain. The doctor did not state that such was a fact; it was a matter of conjecture. Therefore, we do not consider this theory of the case was established by any degree of preponderance of evidence. We have reached the same conclusion as to the doctor's opinion that plaintiff suffered 20 percent impairment of the hearing in one ear. The doctor, by his own statement, is not a specialist in this field of medical practice, and, according to his own admission, the tests made by him were inconclusive. The doctor indicated if he could continue to treat plaintiff he would refer him to a specialist. Neither was it established, if such a disability existed in plaintiff's ear, that such was caused by the accident.
In our consideration of all the evidence appertaining to plaintiff's injuries and the pain and suffering as a consequence thereof, we have come to the conclusion that the award as made by the trial court is excessive and out of proportion with awards for comparable injuries. We think, for the injuries sustained by plaintiff and for the pain and suffering as a result thereof, $1,500 would be an adequate award, and for the loss of wages during 14 weeks at $30 per week, or a total of $420, would sufficiently cover that item. In addition, an allowance should be made of the medical expenses incurred, which we calculate from the record to be $298.
For the reasons herein assigned, the judgment appealed is amended by reducing the award to $2,218 and, as thus amended, *568 the judgment is affirmed, plaintiff to pay the cost of appeal; all other costs to be paid by defendants.
Amended and affirmed.